# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 18

### OCTOBER TERM, A.D. 2022

### February 22, 2023

FELIX FELICIS, LLC, a Wyoming
limited liability company,

Appellant
(Defendant),

v.

S-22-0152

RIVA RIDGE OWNERS
ASSOCIATION,

Appellee
(Claimant).

*Appeal from the District Court of Teton County*
The Honorable Melissa M. Owens, Judge

*Representing Appellant:*
James K. Lubing, Nathan D. Rectanus of Lubing, Gregory & Rectanus, LLC, Jackson, Wyoming. Argument by Mr. Lubing.

*Representing Appellee:*
Paula A. Fleck, Bryson C. Smith of Holland & Hart LLP, Jackson, Wyoming. Argument by Ms. Fleck.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Felix Felicis, LLC (Felix) and Riva Ridge Owners Association (RROA) engaged in protracted litigation after RROA's Site Committee rejected Felix's plans to build a home on its tract in the Riva Ridge subdivision. RROA incurred attorney fees and other related costs during the litigation which it ratably levied upon all tract owners in the subdivision, including Felix, via annual assessments. Felix refused to pay a portion of the assessments because it claimed the subdivision's restrictive covenants did not allow RROA to assess attorney fees and litigation costs against the tract owners. The parties agreed to arbitrate their dispute over the unpaid assessments. The arbitrator ultimately found in favor of RROA and awarded it a total of $334,890.03. Felix filed an application to vacate the arbitration award with the district court, arguing the arbitrator exceeded his powers and made a manifest mistake of law by failing to consider its affirmative defenses. The district court denied the application. We affirm.

## ISSUE

[¶2]   Felix raises a single issue which we re-state as follows:

Did the arbitrator commit a manifest mistake of law by failing to address Felix's affirmative defenses?

## FACTS

[¶3]   In December 2010, Felix purchased an undeveloped tract in Riva Ridge, a high-end seven-tract residential subdivision in Teton County, Wyoming. At that time, the subdivision was governed by restrictive covenants recorded in December 1996 (1996 restrictive covenants). Relevant here, the covenants created RROA, required tract owners to obtain the approval of RROA's Site Committee prior to building a home on their tracts, and allowed RROA to collect annual assessments from each tract owner to "be used exclusively [for] promot[ing] the recreation, health, safety and welfare of the residents," "for the improvement and maintenance" of the common roads and driveways, and for "[RROA] employees' wages, mailing costs and other related expenses incurred on behalf of [RROA]." A tract owner's failure to timely pay an assessment became an automatic lien upon the owner's tract, and the unpaid amount was subject to interest "at the rate of fifteen percent (15%) per annum."

[¶4]   Soon after purchasing its tract, Felix submitted building plans to RROA's Site Committee for its approval to build a home and a detached writer's studio on Felix's tract. The Site Committee rejected Felix's plans because it believed they violated the architectural design standards of the 1996 restrictive covenants. Felix sued RROA and its Site Committee challenging, among other things, the Site Committee's interpretation of the 1996 restrictive covenants. Thereafter, the parties engaged in a years-long legal battle

1

which included summary judgment proceedings, a bench trial, and an appeal. *See Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2016 WY 67, 375 P.3d 769 (Wyo. 2016). The parties ultimately stipulated to dismissal of the lawsuit with prejudice.

[¶5] RROA incurred attorney fees and other litigation-related costs defending Felix's lawsuit. It included those fees and costs in the annual assessments which it levied ratably upon all subdivision tract owners, including Felix. Beginning in 2013, Felix intentionally did not pay a portion of each assessment because it believed it was not obligated to pay for the attorney fees and costs RROA incurred in defending the lawsuit. RROA claimed Felix owed the unpaid assessments (totaling $118,360.00) plus interest.

[¶6] In April 2018, the subdivision's tract owners amended the 1996 restrictive covenant's architectural standards and the "purpose" of the annual assessments. The 2018 restrictive covenants allowed RROA to use the annual assessments for the purposes stated in the 1996 restrictive covenants and for "[RROA] employees' wages, mailing costs, accounting expenses, *legal expenses*, and other expenses incurred on behalf of [RROA]." (Emphasis added). Felix filed suit against RROA and all tract owners challenging the legality of the 2018 restrictive covenants. RROA again levied the attorney fees and costs it incurred in the lawsuit upon the tract owners, including Felix, via the annual assessments, and again Felix refused to pay a portion of them based on its belief RROA was not authorized by the 1996 restrictive covenants to assess attorney fees and costs. In December 2020, Felix sold its tract in the subdivision, dismissed its lawsuit with prejudice, and agreed to submit its dispute with RROA over the unpaid assessments to binding arbitration before a single arbitrator jointly selected by the parties.

[¶7] After discovery, both parties moved the arbitrator for summary judgment. Relevant here, Felix argued the 1996 restrictive covenants, not the 2018 restrictive covenants, applied. The plain language of the 1996 restrictive covenants, according to Felix, did not allow for the collection of the attorney fees and costs RROA incurred in defending Felix's lawsuits as part of the annual assessments. However, even if the 1996 restrictive covenants allowed for the assessment of such attorney fees and costs, Felix argued RROA was not entitled to relief because RROA was the first to materially breach the 1996 restrictive covenants, there was a failure of consideration, and RROA's claim for the unpaid assessments was barred by laches, waiver, and estoppel (hereinafter collectively referred to as Felix's affirmative defenses).

[¶8] The arbitrator issued an "Interim Ruling on Cross-Motions for Summary Judgment" (Interim Ruling) in which he granted RROA's summary judgment motion and denied Felix's motion. The arbitrator decided the 1996 restrictive covenants were the applicable covenants, they "authorize[d] the[] assessments," and Felix "[was] required to pay them, as a matter of law" notwithstanding any disputes with RROA. He also found Felix had failed to cite any case law from any jurisdiction supporting its arguments. The arbitrator

decided his "findings ma[d]e a full discussion of the other claims and defenses asserted by [Felix] unnecessary."

[¶9]    Felix filed a motion for reconsideration or, in the alternative, for clarification of the arbitrator's Interim Ruling.  It argued the arbitrator committed a manifest mistake of law by "refus[ing] to address" its affirmative defenses and by concluding a full discussion of them was "unnecessary" based on his determination the 1996 restrictive covenants authorized the assessments.  With respect to the latter argument, Felix maintained its affirmative defenses were "not foreclosed or in any way rendered moot" by the arbitrator's determination that the assessments were authorized by the covenants; in fact, it was that determination which rendered an analysis of its affirmative defenses necessary.  For instance, it claimed its argument that it was excused from paying the assessments because RROA was the first to materially breach the covenants applied even if it had a duty under the covenants to pay the assessments.  According to Felix, the only ruling which would have made it "unnecessary" to analyze and resolve its affirmative defenses would have been that the 1996 restrictive covenants did not authorize the disputed assessments.

[¶10]  The arbitrator denied Felix's motion for reconsideration, stating:

> I have considered [Felix]'s arguments regarding its affirmative defenses, as well as its other assertions including without limitation whether or not the 1996 [restrictive covenants] allow RROA to assess the owners for the purposes at issue here, and which party, if either, was the first to materially breach the [c]ontract between the parties.  I find no reason to arrive at a different result from that included within the Interim Ruling.

[¶11]  With respect to Felix's motion for clarification, the arbitrator ruled:

> [] The Interim Ruling is clear:  See the Interim Ruling, page 1 ("I have carefully considered the parties' arguments"); page 4 (recognition of the separate affirmative defenses asserted by [Felix]); and page 6, paragraph 6 ("the above findings make a full discussion of the other claims and defenses asserted by [Felix] unnecessary[]")[.]    These provisions indicate that in fact I did fully consider [Felix]'s contentions in issuing the [I]nterim Ruling.

To the extent any further clarification was necessary, the arbitrator confirmed he had "carefully and fully . . . consider[ed] all of [Felix]'s claims and defenses[,] . . . rejected them [based on the facts and law asserted by both parties and Felix's failure to satisfy its burden of proof regarding them], and deemed a full discussion not needed for purposes of the Interim Ruling."  In his final award, the arbitrator awarded RROA $334,890.03, which

included the principal amount of the unpaid assessments, interest, the arbitrator's fees, and the attorney fees and costs RROA incurred in the arbitration proceeding.

[¶12] Felix filed an "Application to Vacate Final Arbitration Award" under Wyo. Stat. Ann. § 1-36-114 (LexisNexis 2021) with the district court. It claimed the arbitrator exceeded his powers and made a manifest mistake of law by failing to address or analyze its affirmative defenses and by determining Felix's affirmative defenses were rendered moot by the arbitrator's determination that the 1996 restrictive covenants authorized the disputed assessments. The district court denied the application to vacate, concluding Felix had failed to meet its burden of showing vacatur was warranted. It confirmed the arbitration award with the exception that it modified the award to include an award of RROA's attorney fees for defending Felix's application to vacate. Felix timely appealed.

## STANDARD OF REVIEW

[¶13]      We review *de novo* a district court's decision to confirm, vacate, or modify an arbitration award. When reviewing the district court's order after an arbitration, we undertake a full review of the record without deference to the views of the trial court. At the same time, this Court, like the district court, shows substantial deference to the decision of the arbitrator.

*Skaf v. Wyo. Cardiopulmonary Servs., P.C.*, 2021 WY 105, ¶ 34, 495 P.3d 887, 897 (Wyo. 2021) (quoting *Worman v. BP Am. Prod. Co.*, 2011 WY 54, ¶ 6, 248 P.3d 644, 646 (Wyo. 2011)) (other citation omitted).

## DISCUSSION

[¶14] Felix argues the district court erred by denying its application to vacate the arbitration award because it claims the arbitrator committed a manifest mistake of law in the Interim Order.[1]

[¶15] In their written stipulation to submit their dispute over the unpaid assessments to arbitration, the parties agreed the arbitration would be conducted in accordance with the Wyoming Uniform Arbitration Act, Wyo. Stat. Ann. §§ 1-36-101 to 1-36-119 (LexisNexis). Under the Act, "[a]n arbitration award may be vacated by the court on one of five grounds stated in . . . § 1-36-114[.]" *Dorr, Keller, Bentley & Pecha v. Dorr, Bentley & Pecha*, 841 P.2d 811, 817-18 (Wyo. 1992). "In addition to the reasons articulated in [§ 1-36-114], our case law sets out other bases for vacation of an arbitration award [including]

---

[1] In a single instance in its brief, Felix argues, as it did in the district court, that the arbitration award should be vacated because the arbitrator exceeded his authority. *See* § 1-36-114(a)(iii) (requiring a court to vacate an arbitration award when "the arbitrators exceeded their powers"). In its legal analysis, however, Felix argues only that the arbitrator made a manifest mistake of law, and we confine our analysis accordingly.

4

'a manifest mistake of fact or law appearing upon the face of the award.'" *Welty v. Brady*, 2005 WY 157, ¶ 11, 123 P.3d 920, 924 (Wyo. 2005) (quoting *Matter of Town of Greybull*, 560 P.2d 1172, 1175 (Wyo. 1977) (other citations and some internal quotation marks omitted). *See also, Skaf*, ¶ 36, 495 P.3d at 898 ("[W]hen considering a motion to vacate, the trial court is not limited to the grounds listed in [§ 1-36-114] but may also vacate the award for . . . '*a manifest mistake of fact or law appearing upon the face of the award.*'" (quoting *JBC of Wyo. Corp. v. City of Cheyenne*, 843 P.2d 1190, 1194-95 (Wyo. 1992))) (other citations omitted). The reason for allowing vacatur based on a manifest mistake of fact or law appearing on the face of the award "is to protect the integrity of arbitration." *Skaf*, ¶ 36, 495 P.3d at 898 (citations omitted).

[¶16] In *Skaf*, we adopted a three-element test to determine whether an arbitrator committed a manifest mistake of law:

> "1. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.
>
> 2. The arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.
>
> 3. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable."

*Mountain Bus. Ctr., LLC v. Fork Rd., LLC*, 2022 WY 147, ¶ 29, 520 P.3d 538, 545 (Wyo. 2022) (quoting *Skaf*, ¶ 34, 495 P.3d at 898, and *Garrity v. McCaskey*, 223 Conn. 1, 612 A.2d 742, 747 (1992)). Felix has the burden to "show by 'clear and convincing evidence' that [the] award 'was obtained by . . . a manifest mistake of . . . law appearing upon the face of the award.'" *Id.*, ¶ 15, 520 P.3d at 542 (quoting *Skaf*, ¶ 37, 495 P.3d at 899, and *Matter of Town of Greybull*, 560 P.2d at 1175). It "'cannot "rely on mere legal error" to vacate an arbitrator's award confirmed by the district court[;] "[a]n arbitrator's erroneous interpretations or applications of law are not reversible."'" *Id.*, ¶ 28, 520 P.3d at 545 (quoting *Skaf*, ¶ 37, 495 P.3d at 899, and *Worman*, ¶ 12, 248 P.3d at 648).

[¶17] As RROA points out in its brief, Felix's argument on appeal is conflicting. On the one hand, Felix claims the arbitrator committed a manifest mistake of law by "fail[ing] to address" and "outright ignor[ing]" its affirmative defenses. On the other hand, it contends the arbitrator "reject[ed]" and "summarily dismissed" Felix's affirmative defenses. In other places in its brief, Felix maintains the manifest mistake of law occurred when the arbitrator determined it was "unnecessary" to fully discuss the affirmative defenses after concluding the 1996 restrictive covenants allowed RROA to collect attorney fees and costs

5

via the annual assessments, which Felix interprets as the arbitrator deciding its affirmative defenses were moot. However, in its reply brief, Felix states "the issue before this Court is whether an arbitrator's statement that he or she considered all arguments - without providing any substantive analysis, reasoning, or justification whatsoever - satisfies an arbitrator's duties." Under any variation of Felix's argument, it has not satisfied its burden of showing by clear and convincing evidence that the arbitrator made a manifest mistake of law appearing on the face of the Interim Order.

[¶18] The arbitrator did not "fail to address" or "outright ignore" Felix's affirmative defenses in the Interim Order. At the outset of the Interim Order, the arbitrator noted he had reviewed the parties' summary judgment motions and responses, read their cited legal authorities, and carefully considered their arguments. He acknowledged Felix had raised the affirmative defenses of first to materially breach, failure of consideration, waiver, laches, and estoppel. He also determined a "full discussion" of Felix's affirmative defenses was "unnecessary."

[¶19] The arbitrator did not find Felix's affirmative defenses were rendered moot by his determination the 1996 restrictive covenants allowed RROA to annually assess its attorney fees and costs to the tract owners. The arbitrator stated: "The *above findings* make a full discussion of the other claims and defenses asserted by [Felix] unnecessary." The "above findings" included:

(1) persuasive law from other jurisdictions holding the assessment of attorney fees and costs is valid and subdivision owners must pay the assessments notwithstanding their disputes with the owners' association, *see Willow Bend Homeowners Ass'n, Inc. v. Robinson*, 665 S.E.2d 570 (N.C. App. 2008); *Ocean Trail Unit Ass'n. v. Mead*, 650 So.2d 4 (Fla. 1994);

(2) a Wyoming district court case with similar facts which ruled consistently with the persuasive law from other jurisdictions, *see South Wilderness Ranch Homeowners Ass'n. v. Fix*, District Court of Teton County, Wyoming, 9th Judicial District, Civil Action No. 15537 (Order filed June 29, 2011);

(3) Felix's failure to cite any case law from any jurisdiction supporting its arguments; and

(4) the determination that the assessments were authorized by the 1996 restrictive covenants and Felix was required to pay them as a matter of law.

When the arbitrator's statement that a full discussion of Felix's affirmative defenses was "unnecessary" is placed in context, it is clear the arbitrator did not decide Felix's affirmative defenses were moot but rather that they were without merit. In his order denying Felix's motion to reconsider and granting in part Felix's alternative motion for clarification, the arbitrator confirmed he rejected the affirmative defenses based on the facts and law presented by the parties.

[¶20] Felix does not argue the arbitrator substantively erred by rejecting its affirmative defenses, identify any clearly applicable law ignored by the arbitrator, or otherwise attempt to satisfy the three-element test we adopted in *Skaf* for determining whether an arbitrator committed a manifest mistake of law. Rather, it maintains the arbitrator's mere statement that he considered all of Felix's affirmative defenses, without any substantive written analysis, reasoning, or justification, fails to satisfy the arbitrator's duties and deprives litigants of even a basic understanding of the logic and analysis behind a decision, thereby essentially providing arbitrators limitless discretion and rendering the arbitration process inherently unfair.

[¶21] Felix cites no case law or other legal authority holding that an arbitrator's failure to include a written analysis or discussion of a claim or defense in an award constitutes a manifest mistake of law appearing on the face of the award. Wyoming's Uniform Arbitration Act imposes no requirement on an arbitrator to provide a written discussion or analysis of the parties' claims or defenses. It states only that the arbitration award "shall be in writing and signed by the arbitrators joining in the decision." Section 1-36-110(a). The arbitrator's final award in this matter was in writing and signed.

[¶22] As in this case, arbitrations typically arise from agreement of the parties. *See Matter of Longwell*, 2022 WY 56, ¶ 13, 508 P.3d 727, 731 (Wyo. 2022) ("Wyoming recognizes arbitration as a method of dispute resolution when the parties agree by contract to arbitrate or when a statute . . . provides for arbitration."). As part of their agreement to arbitrate, parties are free to require the arbitrator to provide a written analysis and discussion of every claim and defense or to allow the arbitrator to enter a written award without any explanation. In this case, RROA included the following clause in the parties' stipulation to submit their dispute over the unpaid assessments to binding arbitration:

> In the event, [Felix] claims, as a claim or defense in the arbitration, that RROA's assessment claim is barred based on a claim or defense not on the merits, including but not limited to, being barred under the doctrine of laches or because it was not brought as a compulsory counterclaim in prior litigation, [Felix] and RROA stipulate and agree that the arbitrator shall be required to make a separate finding, independent of other findings in the arbitration, regarding whether [RROA's] claim [for the unpaid assessments] is barred, and, if barred, the reason

7

> it is barred, including specifying under which prior proceeding it is barred.

Felix could have insisted on a similar provision requiring the arbitrator to make detailed findings and conclusions with respect to its affirmative defenses. It did not and cannot now complain that the arbitrator should have provided a more detailed award or that the process was unfair.[2]

[¶23] Felix contends that if we allow the arbitrator's award to stand in this case, an arbitrator can essentially shield his award from any claim he committed a manifest mistake of law by simply stating, without any written analysis or discussion, that he has considered all arguments and evidence. Such result, Felix maintains, will remove all judicial oversight from the arbitration process.

[¶24] The purpose of arbitration is to "provide parties with a quick and efficient means to resolve disputes other than through litigation." *Simon v. Teton Bd. of Realtors*, 4 P.3d 197, 204 (Wyo. 2000). In other words, arbitration is intended to be the end of litigation, not the beginning of it. As a result, judicial review of an arbitration award under the Uniform Arbitration Act is severely circumscribed and the non-statutory grounds for vacatur limited. *See* §§ 1-36-114 (providing five grounds for vacating an arbitration award), 1-36-115 (providing three grounds for modification/correction of arbitration award); *JBC of Wyo. Corp.*, 843 P.2d at 1194-95 (the non-statutory grounds for vacating an arbitration award are "'fraud, corruption, behavior beyond the bounds of natural justice, excess of authority, or a manifest mistake of fact or law appearing upon the face of the award'" (quoting *Tex. W. Oil & Gas Corp. v. Fitzgerald*, 726 P.2d 1056, 1062 (Wyo. 1986), and *Riverton Valley Elec. Ass'n v. Pac. Power & Light Co.*, 391 P.2d 489, 500 (Wyo. 1964))). By agreeing to arbitration and to being bound by the Wyoming Uniform Arbitration Act, Felix knew any decision by the arbitrator would be subject to limited judicial review. It has not been deprived of that judicial review. Felix simply failed to satisfy its burden of showing by clear and convincing evidence that the arbitrator made a manifest mistake of law appearing on the face of the award requiring its vacatur.

---

[2] In its motion to reconsider or in the alternative to clarify the arbitrator's Interim Ruling, Felix argued the parties' stipulation regarding arbitration required the arbitrator to make a separate finding, independent of the other findings in the arbitration, regarding its claims and defenses. The arbitrator rejected Felix's reading of the stipulation, finding it was unambiguous and only required him to fully discuss each of Felix's claims and defenses if RROA's claim for full payment of the assessments was barred. Because he found the assessments were valid and enforceable, i.e., not barred, the arbitrator decided the stipulation did not require him to discuss the affirmative defenses. Felix does not rely on the parties' stipulation in its appellate brief as a basis for arguing the arbitrator was required to provide a written discussion and analysis of the affirmative defenses. However, at oral argument, it initially asserted the stipulation required a separate and full discussion of the affirmative defenses, at least with respect to laches, but it ultimately agreed with RROA's counsel that the stipulation only required a separate and full discussion of the affirmative defenses if the arbitrator decided RROA's claim for the unpaid assessments was barred, which he did not.

8

**CONCLUSION**

[¶25]  The district court did not err by denying Felix's application to vacate the arbitration award.  We affirm.  We grant RROA's request that we order Felix to pay its attorney fees and costs on appeal but decline to remand the fees and costs matter to the district court.[3] The award of appellate fees and costs is for this Court.  *See Cline v. Rocky Mountain*, Inc., 998 P.2d 946, 953 (Wyo. 2000) ("Generally, the appellate court, rather than the trial court, determines the proper amount of fees to be awarded for the legal work on appeal." (citing *Ahearn v. Tri-County Fed. Savings Bank*, 954 P.2d 1371, 1373 (Wyo. 1998); *DeWitt*, 718 P.2d at 866)).

[¶26]  We will determine the appropriate amount of appellate fees and costs after RROA submits the proper documentation.

---

[3] The arbitrator determined RROA was entitled to an award of its attorney fees and costs under Article V, § 1 of the 1996 restrictive covenants, which stated in relevant part:  "Each [annual or special] assessment, together with interest, costs and reasonable attorney's fees shall . . . be the personal obligation of the entity or person who was the Owner of such Property at the time when the assessment fell due."  The district court also awarded RROA, without any objection from Felix, the attorney fees RROA incurred in defending Felix's application to vacate the arbitration award.  Because Felix has never challenged RROA's entitlement under the 1996 restrictive covenants to the attorney fees and costs RROA incurred in the arbitration nor does Felix contest RROA's request for its appellate fees and costs, RROA is entitled to its attorney fees and costs on appeal.  *See EOG Res., Inc. v. JJLM Land, LLC*, 2022 WY 162, ¶ 44, 522 P.3d 605, 617 (Wyo. 2022) ("Because EOG has not appealed from the district court's determination that JJLM is entitled to its attorney fees and costs under the 2019 [Surface Use and Damage Agreement] and because EOG does not contest JJLM's request for its appellate fees and costs in its reply brief, JJLM is also entitled to its attorney fees and costs on appeal." (citing *Levy v. Aspen S, LLC*, 2021 WY 46, ¶ 32, 483 P.3d 852, 860 (Wyo. 2021), *Kinstler v. RTB S. Greeley, Ltd., LLC*, 2007 WY 98, ¶ 13, 160 P.3d 1125, 1129 (Wyo. 2007), and *DeWitt v. Balben*, 718 P.2d 854, 864 (Wyo. 1986))).