# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 54

APRIL TERM, A.D. 2023

June 1, 2023

CIRCLE C RESOURCES,

Appellant
(Plaintiff),

v.                                                            S-22-0238

CHARLENE HASSLER,

Appellee
(Defendant).

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
> Timothy M. Stubson, Holly Tysse, Crowley Fleck PLLP, Casper, Wyoming

*Representing Appellee:*
> Jeremy James Hugus, Benjamin Scherner, Platte River Law Firm, LLC, Casper, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]    The parties' initial dispute over a noncompete provision in an employment contract was remanded to the trial court in *Hassler v. Circle C Resources* (*Hassler I*), 2022 WY 28, 505 P.3d 169 (Wyo. 2022).  In response to that remand, the trial court entered a judgment in favor of Ms. Hassler.  The trial court also awarded attorneys' fees and costs in the amount of $70,410.36 to Ms. Hassler.  Circle C Resources (Circle C) challenges both the recoverability and the amount of fees awarded.  We affirm in part, reverse in part, and remand.

## *ISSUES*

[¶2]    We restate the two issues as:

> 1.  Did *Hassler I* invalidate the Attorneys' Fees provision in the parties' Confidentiality and Noncompete Agreement?
>
> 2.  Did the district court abuse its discretion when it awarded fees and costs to Ms. Hassler after remand?

## *FACTS*

[¶3]    The underlying facts of this case are set forth in detail in *Hassler I*, 2022 WY 28, 505 P.3d 169.  We therefore only summarize the facts pertaining to the attorneys' fees issues on appeal.

[¶4]    Circle C provides day and residential habilitation services for clients with developmental disabilities.  Circle C has a facility in Casper where it provides such services.  It also offers these services in employee homes.  Circle C hired Ms. Hassler in 2015 to provide services in her home.

[¶5]    When Circle C hired Ms. Hassler, the parties executed a "Confidentiality and Noncompetition Agreement."  That contract has three separately identified one-page sections and one page of recitals.  Section One is captioned "Confidentiality."  Section Two is captioned "Noncompetition."  Section Three is captioned "Breach of Agreement."  Ms. Hassler left her employment with Circle C in 2017.  However, she continued to provide services to one former Circle C client in her home.  Circle C filed suit, asserting Ms. Hassler breached the noncompete provisions of the parties' contract.

[¶6]    In *Hassler I*, we concluded the noncompete agreement was unreasonable on its face and therefore void in violation of public policy.  *Hassler I*, ¶¶ 4, 31, 505 P.3d at 171–72, 179.  We remanded to the district court.  *Id.* at ¶ 32, 505 P.3d at 179.  On remand, the trial court entered a judgment in favor of Ms. Hassler.  She then requested attorneys' fees

pursuant to an attorneys' fees provision in Section Three of the contract. Her counsel provided affidavits and billing statements in support of the fee request. Circle C timely objected to her request, asserting that *Hassler I* invalidated the entire contract, including the Attorneys' Fees provision. Circle C also asserted the fees were unreasonable, alleging several specific defects in the fee request and billing records, and contested certain costs. Ms. Hassler filed a reply addressing all issues.

[¶7]    Soon after her reply brief was filed, the trial court entered a short order awarding all requested fees and costs, totaling $70,410.36. The order did not address Circle C's objections or include any analysis under the lodestar test and Wyo. Stat. § 1-14-126(b). This appeal timely followed.

## *DISCUSSION*

### I.    *Hassler I did not invalidate the attorneys' fees provision of the parties' Confidentiality and Noncompete Agreement.*

[¶8]    Wyoming generally applies the American rule which makes each party responsible for their own attorneys' fees. *E.g.*, *Levy v. Aspen S, LLC*, 2021 WY 46, ¶ 9, 483 P.3d 852, 856 (Wyo. 2021); *Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.*, 2021 WY 3, ¶ 65, 478 P.3d 1171, 1187 (Wyo. 2021). A prevailing party may, however, be reimbursed for attorneys' fees when provided for by contract or statute or, in some cases, as a form of punitive damages. *E.g.*, *Prancing Antelope I*, ¶ 65, 478 P.3d at 1187; *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 29, 360 P.3d 1006, 1016 (Wyo. 2015); *Alexander v. Meduna*, 2002 WY 83, ¶ 49, 47 P.3d 206, 220–21 (Wyo. 2002).

[¶9]    Whether a contract provides a legal basis to award attorneys' fees is a question of contract interpretation. Contract interpretation is a matter of law which we consider de novo. *Hassler I*, ¶ 10, 505 P.3d at 173; *Levy*, ¶ 7, 483 P.3d at 855 (citations omitted); *Pope v. Rosenberg*, 2015 WY 142, ¶ 21, 361 P.3d 824, 830 (Wyo. 2015) (citations omitted).

[¶10]   Ms. Hassler requests attorneys' fees based on Section 3.E of the contract:

> Attorneys' Fees. If an attorney shall be retained to interpret or enforce the provisions of this agreement, the prevailing party shall be entitled to reasonable attorneys' fees, including any such fees set by the trial or appellate court upon trial or appeal.

Circle C asserts the entire contract, including the Attorneys' Fees provision, is void following our decision in *Hassler I*.

[¶11]   In *Hassler I*, we stated "the entire agreement is void in violation of public policy." *Hassler I*, ¶ 30, 505 P.3d at 179. Notably, however, we isolated our analysis to

2

the noncompete provisions in Section Two of the three-section contract. *See id.* at ¶¶ 9, 12–31, 505 P.3d at 172–80. We did not address any aspect of Section One—the confidentiality section—or Section Three—the breach of contract section that contains the Attorneys' Fees provision. Our focus was directed on the contract's noncompete provisions and our "blue pencil rule" jurisprudence. *See id.* Read in context, *Hassler I* held the "entire" noncompete agreement was void as a matter of public policy, not the confidentiality agreement or the enforceability agreements.

[¶12] We have previously held "[w]here only a single provision of a contract is contrary to public policy and the considerations from both sides are sufficient for performance absent such paragraph, we will enforce the contract with the exception of the invalid provision." *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 957 (Wyo. 1999); *Tate v. Mountain States Tel. & Tel. Co.,* 647 P.2d 58, 61–2 (Wyo. 1982) (commenting on the general rule that when a contract is contrary to public policy only because of a provision in a single paragraph of a voluminous work, the remainder of the contract remains enforceable). The same reasoning permits Section Two to be severed from the remainder of the contract at issue here. *Dixon v. Williams*, 584 P.2d 1078, 1081 (Wyo. 1978) ("If an alleged illegal contract involving several considerations will remain a complete, enforceable entity after any illegal or improper provisions have been excised, a finding of total illegality is not required. The improper provisions may be judicially severed and the remaining contract enforced, a concept not startling or new." (citations omitted)).

[¶13] This approach is also consistent with the Restatement (Second) of Contracts § 184, which we expressly adopted in *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 546 (Wyo. 1993).[1] According to the Restatement:

> (1) If less than all of an agreement is unenforceable under the rule stated in § 178, a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.

Restatement (Second) of Contracts § 184(1) (1981). Williston on Contracts similarly states the rule:

> [The] basic rule of severability is articulated in the Restatement.

---

[1] *Hopper* looked in part to this Restatement to support its application of a liberal blue pencil rule. 861 P.2d at 546–47. In *Hassler I*, we overruled *Hopper*'s blue pencil rule, but we did not rescind our adoption of the Restatement (Second) of Contracts § 184. *See Hassler I*, ¶ 29, 505 P.3d at 178.

> If the whole transaction was for an illegal purpose, or if the illegal covenants show gross moral turpitude, the remaining covenants, although in themselves entirely legal, will not be enforced.
>
> Perhaps the most common application of the principle involved in the partial enforcement of an unreasonable contract occurs in contracts in restraint of trade. If the covenants of such a contract can be divided and one division is within the limits allowed by law, it may be enforced[.]

8 Williston on Contracts § 19:70 (4th ed. May 2023 Update).

[¶14] Circle C contends the noncompetition agreement was an essential part of the contract and therefore cannot be severed, thus rendering all three contract sections void. This is an issue of contract interpretation.

[¶15] Our primary focus in contract interpretation is to determine the parties' intent. *E.g.*, *Pope*, ¶ 20, 361 P.3d at 830 (citation omitted); *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010) (citation omitted). We objectively determine the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. *P & N Invs., LLC v. Frontier Mall Assocs., LP*, 2017 WY 62, ¶ 20, 395 P.3d 1101, 1107 (Wyo. 2017); *Pope*, ¶ 20, 361 P.3d at 830 (citation omitted); *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 6, 185 P.3d 1259, 1262 (Wyo. 2008). We interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning. *Pope*, ¶ 20, 361 P.3d at 830 (citation omitted). We presume each provision in a contract has a purpose, and we avoid interpreting a contract to find inconsistent provisions or to render any provision meaningless. *Id.* (citation omitted).

[¶16] As noted above, the contract between Circle C and Ms. Hassler has three distinct sections, expressly captioned: Confidentiality, Noncompete, and Breach of Contract. The confidentiality section addresses a nondisclosure requirement, a confidential relationship between the parties, restrictions on the use of client lists, and a requirement to return documents. It makes no reference to the noncompete agreement. The noncompete section of the contract does not include language distinguishing it as the primary or essential component of the contract. The breach of contract section includes various contract enforcement provisions and a cross reference to the confidentiality section, allowing for injunctive relief. It makes no cross reference to the noncompete section. We find nothing in the four corners of the contract to indicate that the noncompete section was the essential component of the contract such that its invalidation must invalidate the entire contract.

4

[¶17]   We also reviewed the contract's recitals.  Contract recitals can be significant and can express the intent and purposes of a contract.  *Essex Holding, LLC v. Basic Properties, Inc.*, 2018 WY 111, ¶¶ 43–44, 427 P.3d 708, 721–22 (Wyo. 2018) (citations omitted); *cf. Horse Creek Conservation Dist. v. State ex rel. Wyo. Att'y Gen.*, 2009 WY 143, ¶ 28, 221 P.3d 306, 316 (Wyo. 2009) (evaluating recitals with other contract components to determine the intent of the parties).  However, the recitals in this contract offer no support for Circle C's position:

RECITALS

A.  Employer has employed employee to devote his or her full time, attention, and energies to the business of the employer and to use his or her best efforts, skill, and abilities in performing the specific duties of such employment, and employee shall not, without prior written consent of employer, either directly or indirectly, engage in any other occupation, profession or business.

B.   As a consequence of the employment by employer, employee will have access to information not generally known to the general public or in the industry in which employer is or may become engaged about employer's products, processes, clients, customers, services, suppliers, pricing policies, and related matters.  In addition, employer may provide training to employee in relation to these areas.  It is the desire of the employer and employee that all such training and information be and remain confidential.

C.  For the separate consideration given to the employee of: <u>Circle C Resources</u>, the employee agrees to faithfully aide by and be bound by all terms herein.  Employee agrees that the consideration given herein is adequate to support the agreements and promises made herein.

[¶18]   Recital A indicates an intent that the employee focus on her work without engaging in other occupations or businesses.  Circle C reads Recital A to reflect a narrow agreement not to compete.  Even were we to read Recital A so narrowly, Recital B addresses a second essential component of the contract—confidentiality—by emphasizing the employee's access to proprietary employer and training information.  Recital C then references the employee's promise to support the multiple agreements and promises contained in the contract in exchange for the consideration given.  The recitals simply do not distinguish any of the three contract sections as the sole agreement or the essential part of the agreed exchange.

5

[¶19]   Circle C also relies on the contract's title for support that the noncompete provision is the essential component of the contract.  We disagree.  The title—"Confidentiality and Noncompetition Agreement"—instead indicates two independent contract components by using the conjunction "and," but does not suggest either independent component is so essential that the other component cannot be severed.

[¶20]   Because *Hassler I* voided only the parties' noncompetition agreement, and the law supports the severability of that agreement from the remainder of the contract, Section Three remains enforceable.  The contract therefore provides Ms. Hassler a legal basis to request reimbursement of her attorneys' fees and costs.[2]

## II.     The trial court abused its discretion by not addressing the lodestar test or applicable discretionary factors in its written order.

[¶21]   Circle C asserts the trial court abused its discretion by summarily awarding Ms. Hassler's requested fees without any analysis of the applicable law, and by awarding "every fee and cost requested" without consideration of Circle C's several objections.  We review such decisions for an abuse of discretion.[3]  *E.g.*, *Prancing Antelope I*, ¶ 64, 478 P.3d at 1187; *Mueller v. Zimmer,* 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo. 2007) (citing *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 951 (Wyo. 2000)).  Circle C bears the burden of demonstrating the trial court abused its discretion.  *Mueller*, ¶ 11, 173 P.3d at 364.

[¶22]   "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."  *Id.* (quoting *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 7, 167 P.3d 639, 641–42 (Wyo.2007)).  A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances.  *Stafford v. JHL, Inc.*, 2008 WY 128, ¶¶ 14–15, 194 P.3d 315, 318 (Wyo. 2008) (quoting *Cline*, 998 P.2d at 951).  The ultimate issue for us to determine is whether the trial court could reasonably conclude as it did.  *Heimer v. Heimer*, 2021 WY 97, ¶ 34, 494 P.3d 472, 481–82 (Wyo. 2021) (citation omitted).

---

[2] Circle C also contends Ms. Hassler is judicially estopped from seeking attorneys' fees because she initially argued the entire contract was void and now seeks to recover attorneys' fees through the same contract. Judicial estoppel is narrowly applied in Wyoming—the doctrine applies to inconsistent positions taken in subsequent actions involving the same issue or parties, not within the same litigation. *Baker v. Speaks*, 2013 WY 24, ¶ 60, 295 P.3d 847, 861 (Wyo. 2013) (citations omitted).  Judicial estoppel does not apply in this case.

[3] An award of costs is subject to U.R.D.C. 501, the other rules and statutes cited in that rule, and a body of case law.  *E.g.*, *Stocki v. Nunn*, 2015 WY 75, ¶¶ 100–02, 351 P.3d 911, 937 (Wyo. 2015); *Graus v. OK Investments, Inc.*, 2014 WY 166, ¶¶ 27–47, 342 P.3d 365, 373–77 (Wyo. 2014). Circle C contested certain costs to the district court. Circle C limited its appellate briefing to attorneys' fees. We therefore limit our analysis to fees.

[¶23]   To determine the reasonableness of the fees requested, Wyoming courts apply the federal "lodestar" test.  *E.g.*, *Heimer*, ¶ 35, 494 P.3d at 482 (citation omitted); *Dishman v. First Interstate Bank*, 2015 WY 154, ¶ 14, 362 P.3d 360, 365 (Wyo. 2015) (citation omitted); *Ringolsby v. Johnson*, 2008 WY 127, ¶ 14, 193 P.3d 1167, 1170 (Wyo. 2008) (citing *Hinkley v. Hinkley*, 812 P.2d 907, 915 (Wyo. 1991)).

> The lodestar test requires that two factors be considered: (1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward.  The party who is seeking an award of fees has the burden of providing proof of the reasonableness of his fee.  In order to meet that burden of proof, the claimant must present not only an itemized billing reflecting the time and the rate, but there must be evidence demonstrating that the fee was reasonable.

*Ringolsby*, ¶ 14, 193 P.3d at 1170 (quoting *Hinkley*, 812 P.2d at 915) (citations omitted).  Discretionary factors are identified in Wyo. Stat. Ann. § 1-14-126(b):

> (b) In civil actions for which an award of attorney's fees is authorized, the court in its discretion may award reasonable attorney's fees to the prevailing party without requiring expert testimony.  In exercising its discretion the court may consider the following factors:
>
>> (i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>>
>> (ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;
>>
>> (iii) The fee customarily charged in the locality for similar legal services;
>>
>> (iv) The amount involved and the results obtained;
>>
>> (v) The time limitations imposed by the client or by the circumstances;

7

(vi) The nature and length of the professional relationship with the client;

(vii) The experience, reputation and ability of the lawyer or lawyers performing the services; and

(viii) Whether the fee is fixed or contingent.

Wyo. Stat. Ann. § 1-14-126(b).

[¶24]   We acknowledge the district court has broad discretion in fashioning a fee award. *Dishman*, ¶ 15, 362 P.3d at 365 (citations omitted).  Equally important, the district court must "provide a concise but clear explanation of its reasons for the fee award." *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584, 595 (Wyo.1989) (quoting *Hensley v. Eckhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).  "[A] trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to [her] determination," so that counsel and a reviewing court can evaluate the soundness of the decision.  *Castellow v. Pettengill*, 2021 WY 88, ¶ 10, 492 P.3d 894, 898 (Wyo. 2021) (citation omitted).  As the United States Supreme Court has emphasized:

> It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement.  **Unless such an explanation is given, adequate appellate review is not feasible**[.]

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) (emphasis added); *see also U.S. ex rel. Noyes v. Kimberly Const., Inc.*, 43 F. App'x 283, 288–89 (10th Cir. 2002) ("Unless district courts are specific in their reasons for awarding attorneys' fees, we have no adequate basis upon which to review such awards.") (quoting *Joseph A. v. New Mexico Dep't of Human Servs.,* 28 F.3d 1056, 1061 (10th Cir. 1994)).

[¶25]   We found nothing in the record or the district court's summary order that affords any insight as to whether or how the court applied the lodestar test or the statutory factors when it awarded Ms. Hassler her requested fees.  The trial court's order reads, in its entirety:

> This matter, having come before the Court on Defendant's Motion for Fees and Costs and the Court finding that good cause exists for the granting of the same;
> Now, therefore, it is hereby ordered, adjudged, and decreed Defendant's Motion be granted and Defendant is awarded her

> attorney's fees and costs in this matter in the amount totaling
> $70,410.36.

Its format suggests the trial court simply filled in the amount of fees and costs on counsel's proposed form of order—$44,436.86 for trial court proceedings and $25,973.50 for the appeal.[4] That sum reflects the entire amount Ms. Hassler requested. However, a court that grants an attorneys' fee award has the obligation to peruse a fee application with an experienced eye and fix a reasonable fee by the exercise of judgment. *In re NRF*, 2013 WY 9, ¶ 9, 294 P.3d 879, 883 (Wyo. 2013) (citations omitted).

[¶26]   Circle C therefore has demonstrated the trial court abused its discretion by entering a summary fee award without explanation. *See Heimer*, ¶¶ 35–37, 494 P.3d at 482 ("The district court did abuse its discretion when it awarded Mother $100 in attorney fees related to her fifth motion without explanation."); *see also Noyes*, 43 F. App'x at 289 ("[T]he district court provided absolutely no explanation for its reduction by half of the attorney's fees requested . . . . Accordingly, it abused its discretion and we remand the issue to the district court for a determination of what fees are equitable and reasonable.").

[¶27]   The question we must next address is whether to remand this matter to the trial court or independently review the record and adjust the fee award as the law and record might advise. *NRF*, ¶ 3, 294 P.3d at 881 ("[W]e agree with many federal appellate courts that appellate judges, such as those on this Court, 'are themselves experts in assessing the reasonableness of an attorneys' fee award, and . . . the appellate court may independently review the record, or itself set the fee.'" (citations omitted)).

[¶28]   We recognize that appellate courts usually play a limited role in reviewing fees, deferring instead to the trial court who observed the attorney's work firsthand. *Id.* The trial court can "take into account their overall sense of a suit" and has a more comprehensive understanding of the litigation underlying the fee request. *Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011). Principles of economy, however, might weigh in favor of the appellate court determining fees in certain cases where the record patently supports the award or necessary adjustments, or to avoid ongoing litigation. *See Hensley*, 461 U.S. at 437.

---

[4] "Generally, the appellate court, rather than the trial court, determines the proper amount of fees to be awarded for the legal work on appeal." *Cline*, 998 P.2d at 953 (discussing *Ahearn v. Tri-County Federal Savings Bank,* 954 P.2d 1371, 1373 (Wyo. 1998)); *see also* W.R.A.P 10.06 ("Any motions for costs or fees shall be filed with the court within 15 days after the final written opinion or order is filed."). We have on occasion been more explicit. *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2023 WY 18, ¶ 25, 524 P.3d 760, 767 (Wyo. 2023); *Schiefer v. State*, 774 P.2d 133, 143–44 (Wyo. 1989). *But see Ahearn*, 954 P.3d at 1373–74 (affirming a trial courts award of appellate fees in the posture of that case). Because this issue was not raised or briefed on appeal, we do not address it further.

[¶29] In *NRF*, we determined we could make a direct adjustment of fees without remand to the trial court. *NRF*, ¶ 3, 294 P.3d at 881. However, a review of the cases we relied on suggests that appellate setting of trial court fees is the exception and not the general rule. "[T]he appellate court customarily defers to the trial court's judgment and reviews the trial court's attorney fee award for abuse of discretion." *Id.* (citations omitted). "We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." *Id.* (quoting *Fox*, 563 U.S. at 837). Some cases cited in *NRF* included direct awards of appellate fees by the appellate court. *See New Jersey v. EPA*, 687 F.3d 386, 390–93 (D.C. Cir. 2012) (per curiam); *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942–45 (3rd Cir. 1995). As to trial court fees, however, in all but one case the appellate court remanded for specific adjustments after reviewing the trial court's analysis. *See ACLU of Georgia v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 181 (4th Cir. 1994). Only in *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, did the appellate court independently conduct the lodestar analysis, and that was because four prior remands had yet to result in a reviewable trial court order. 960 F.2d 564, 566–67 (5th Cir. 1992).

[¶30] Our cases have followed a similar course. We have made direct awards of appellate fees. *E.g.*, *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2023 WY 18, ¶¶ 25–26, 524 P.3d 760, 767 (Wyo. 2023); *Town of Upton v. Whisler*, 824 P.2d 545, 552 (Wyo. 1992); *Bowker v. Bowker*, 795 P.2d 1215, 1219 (Wyo. 1990). But as to trial court fees, we have typically remanded for specific adjustments after reviewing the trial court's findings and analysis. *E.g.*, *Hanft v. City of Laramie*, 2021 WY 52, ¶ 83–85, 485 P.3d 369, 392 (Wyo. 2021) (remanding for a determination of costs after determining costs were recoverable pursuant to W.R.C.P. 54); *Dishman*, ¶¶ 2, 48, 362 P.3d at 362, 374 (remanding with instructions to make a specific downward adjustment of the trial court's fee award); *cf. Ultra Resources Inc. v. Hartman*, ¶¶ 82–84, 2015 WY 40, 346 P.3d 880, 906 (Wyo. 2015) (affirming with no remand, but revising a fee award to align with the parties' fee agreement). We did conduct the lodestar analysis in one case because after four prior remands the trial court continued to err in its attorneys' fees analysis and because the trial judge retired after the fourth remand. *Thorkildsen v. Belden*, 2011 WY 26, ¶¶ 5–7, 20, 23–27, 247 P.3d 60, 62, 65, 66–67 (Wyo. 2011). To date, we have never independently adjusted a trial court fee award where the trial court provided no analysis or reasoning.

[¶31] In our most recent case where a trial court failed to explain the basis for its award, we remanded for entry of an order that would give some proof or evidentiary basis for the fees awarded. *Heimer*, ¶ 35–37, 494 P.3d at 482 ("Because the district court did not give some proof or evidentiary basis for the $100 award, it abused its discretion. . . . We reverse and remand for further consideration on that issue[.]"). Given that Circle C timely objected to the reasonableness of Ms. Hassler's requested fees, yet the trial court failed to address those objections or otherwise explain its award, we conclude here as we did in *Heimer*, that a remand with instructions is appropriate. *See id.*

10

[¶32]   In offering instructions, we remain mindful that the trial court has an "overall sense of a suit" and a more comprehensive understanding of the litigation underlying the fee request.  *Fox*, 563 U.S. at 838.  The nature of Circle C's objections illustrates the importance of the trial court's first-hand knowledge in such matters.  For example, Circle C specifically challenges (1) whether fees should be awarded for Ms. Hassler's sanctioned discovery conduct; (2) duplicate fees for discovery; and (3) block billing and redacted or otherwise inadequate time entries.

[¶33]   As to the first two challenges, there is no question the district court has a superior understanding of the nature and scope of what happened during discovery in this case.  The record includes a summary order after a hearing on Circle C's motion to compel but the hearing was not reported.  Consequently, only the district court has the necessary context to review the fees requested for the sanctioned discovery conduct.  We note that we have previously questioned whether fees should be awarded for time related to sanctioned conduct.  *See Stafford*, ¶ 17, 194 P.3d at 318 ("Evergreen should not be allowed to recover fees relating to issues for which it was specifically sanctioned.").  The trial court also is better positioned to evaluate, in context, the reasonableness of the discovery tasks that Circle C alleges were duplicated.

[¶34]   Concerning Circle C's challenge of the redacted and cursory billing entries, we have cautioned that redacted entries give the court no way to ascertain "the nature of the services performed, and thus the reasonableness of such services."  *Ringolsby*, ¶ 18, 193 P.3d at 1170–71.  Unredacted but short time entries are not necessarily inadequate due to their brevity; however, a court is not bound to accept the billing records as presented.  It has an affirmative obligation to review them with some care.  *NRF*, ¶ 9, 294 P.3d at 883.  It also has a "prerogative (indeed, [a] duty) to winnow out excessive hours." *Id.* (citation omitted).

[¶35]   For these reasons, we remand this matter for full consideration of Ms. Hassler's fee request and Circle C's objections.  This remand is limited solely to the invoices and supporting materials Ms. Hassler previously submitted because the law provides Ms. Hassler only one bite at the apple.  *Ringolsby*, ¶¶ 21–23, 193 P.3d at 1171.  "A remand to allow additional proof on attorney fees will be allowed only in those instances where a party was denied an opportunity to make proof in the proceeding below."  *Pekas v. Thompson*, 903 P.2d 532, 537 (Wyo. 1995).  Likewise, Circle C may not raise new objections that it did not already file.

[¶36]   Any fee award following remand must include "a reasonably specific explanation of all aspects of [the trial court's] fee determination," with some evidentiary basis to support the reasonableness of the fees awarded.  *Perdue*, 559 U.S. at 558; *see also Heimer*, ¶¶ 36–37, 494 P.3d at 482; *Noyes*, 43 F. App'x at 288–89; *Joseph A.*, 28 F.3d at 1061.

## *CONCLUSION*

[¶37] Attorneys' fees are recoverable in this case pursuant to the fee provision in the parties' contract. Only the noncompete provisions of that contract are void as a matter of public policy under *Hassler I*. However, the district court abused its discretion by awarding attorneys' fees without explaining why those fees are reasonable. We remand for further proceedings consistent with this opinion.