# THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 28

APRIL TERM, A.D. 2023

April 6, 2023

VIRGIL and VICKIE MORNINGSTAR,

Appellants
(Plaintiffs),

V.                                                        S-22-0149

CHRISTOPHER and RACHEL ROBISON,

Appellees
(Defendants).

*Appeal from the District Court of Sublette County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
    Mark D. Sullivan, Wilson, Wyoming.

*Representing Appellee:*
    Robert A. Spence, Rocksprings, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]  Virgil and Vickie Morningstar entered into a contract to purchase a residential property from Christopher and Rachel Robison.  The Robisons intended to buy a nearby vacant lot and build a new house.  When the lot they wished to buy was purchased by someone else, the Robisons decided they no longer wanted to sell their home and failed to comply with the terms of the purchase contract with the Morningstars.  The Morningstars filed suit seeking specific performance and monetary damages.  The district court found the Robisons breached the contract, but it denied the Morningstar's request for specific performance and instead awarded them monetary damages. The Morningstars appeal. We reverse and remand.

## ISSUES

[¶2]  Although Appellants presented a single issue, we find it is appropriate to divide the issue into three separate questions.

> I.  Did the district court properly assign the Morningstars the burden of proving monetary damages would be an inadequate remedy?
>
> II.  Did the district court abuse its discretion when it denied the Morningstars' request for specific performance?
>
> III.  Did the district court err as a matter of law in its computation of damages?

## FACTS

[¶3]  The Robisons own a piece of real property located on Lot 25 of the Mountain View Ranches in Daniel, Wyoming (the Property).  The Robisons wanted to purchase a nearby vacant lot on Snowmobile Lane in Daniel, Wyoming (the Snowmobile Lane lot), where they intended to build their "forever home."  The Robisons listed the Property for sale in early July 2021.  A few days later, the Morningstars made a formal written offer to purchase the Property.  The Morningstars' offer incorporated Attachment A, which set forth six pages of additional provisions.  The following day, the Robisons made a counteroffer, which incorporated the original offer and all but three of the additional provisions in Attachment A (the Contract).  The Morningstars promptly accepted the counteroffer.  Two days later, the Morningstars deposited $10,000 in earnest money with the title company.  The closing date was set for August 27, 2021.

[¶4]  Paragraph XIII(A) of the offer originally stated either party could seek specific performance if the other party breached the Contract.  However, Paragraph 3 of

Attachment A replaced Paragraph XIII(A) of the Contract with the following provision:

> Time is of the essence in this contract, and any party who fails to tender any payment, or perform any other condition hereof as herein provided, shall be in default of this Contract. In the event Buyer defaults and fails to complete the purchase of the Property without default of the Seller, Seller's sole remedy shall only be to receive 100% of Buyer's earnest money deposit as defined in the Contract, as stipulated liquidated damages. Seller shall not have the right to specifically enforce the terms and conditions of this Contract, and cannot seek to have a Court give to Seller the right to specifically enforce the terms and conditions of this Contract, as Seller is waiving the right of specific enforcement. **In the event of default by the Seller without default of the Buyer, the Buyer shall have the right, at Buyer's option, to either terminate this Contract and recover 100% of Buyer's earnest money deposit held by Escrow Agent, or to specifically enforce the terms and provisions of this Contract and proceed to Closing.**

(Emphasis added). Paragraph XIII(B) of the Contact required the defaulting or breaching party to "pay all reasonable attorney's fees and costs and other expenses which the non-breaching or non-defaulting party may incur in enforcing" the Contract. Paragraph XIII(B) also stated: "This provision shall not limit any other remedies to which the parties may otherwise be entitled."

[¶5]    In early August 2021, the Robisons sent the Morningstars a letter stating the Snowmobile Lane lot had been sold to someone else, and the Robisons no longer had the ability to sell the Property. The Morningstars' attorney sent the Robisons a letter indicating they would not agree to cancel the Contract, and they intended to close the transaction. The Robisons sent the Morningstars another letter, this time claiming their real estate agent failed to insert a contingency clause into the Contract that would have allowed them to cancel the Contract if they could not purchase the Snowmobile Lane lot. This letter stated the Robisons were "continuing" to cancel the transaction. The Morningstars again rejected the Robisons' attempt to cancel the Contract and insisted on closing the transaction. The Morningstars arrived at the closing with their financing in place, and they were ready, willing, and able to close the transaction. The Robisons failed to appear at the closing.

[¶6]    The Morningstars filed suit against the Robisons. The first cause of action sought a declaratory judgment that the parties had a binding contract, the Robisons breached the Contract by refusing to close the transaction, and the Morningstars were entitled to specific performance and their attorney's fees and costs. The second cause of action alleged the

2

Robisons breached the Contract, and the Morningstars were entitled to specific performance and "any and all damages they may incur as the foreseeable consequence of the [Robisons'] breach of contract, including attorneys' fees and costs."

[¶7] In their answer, the Robisons did not dispute the facts set forth in the Morningstars' complaint. However, they did challenge the allegations that the Contract was valid, binding, and unambiguous, and they disagreed with the assertion they had breached the Contract. The Robisons asserted the Contract should not be enforced because their realtor fraudulently induced them to enter into the Contract, there was no meeting of the minds, and it would be unconscionable to order specific performance when the Morningstars had other available remedies.

[¶8] The Morningstars moved for partial summary judgment, seeking an order compelling the Robisons to convey the Property to them in accordance with the terms of the Contract. Virgil Morningstar submitted an affidavit in support of their motion, which largely repeated the facts set forth above. His affidavit also indicated that due to the Robisons' breach, the Morningstars were forced to find a short-term rental cabin before renting a new house, where they have lived during the pendency of this action. He also averred he and his wife "remain[ed] intent on purchasing the Property" and were ready and able to do so.

[¶9] In response, the Robisons asserted they informed their realtor they only wanted to sell the Property if they could purchase the Snowmobile Lane lot. Their realtor later told them she intentionally omitted the contingency clause from the Contract. The Robisons alleged the Contract was invalid because "there was no mutual assent to the terms and conditions of the Contract[,]" due to their realtor's misrepresentations. They also claimed if the Contract was deemed valid, it was unenforceable "due to the mistakes, misrepresentations, intentional misconduct and possibly even fraud" of their realtor. They again asserted the district court should not award specific performance because the Morningstars had other adequate remedies. The Robisons submitted an affidavit setting forth their allegations against their realtor.

[¶10] The district court granted the Morningstars' motion for partial summary judgment in part. The district court found the Robisons breached "the terms of the binding and enforceable express contract" with the Morningstars, but it denied the Morningstars' request for a decree of specific performance. The district court found the Morningstars "failed to articulate that compensatory damages or other claims for relief set out in the Contract, together with allowable attorney's fees, resulting from the breach of the Contract by [the Robisons] is 'an inadequate or impractical remedy' or that there [were] 'special equities' which demand a decree of specific performance." The district court found there were material questions of fact relating to the remedy or remedies available to the Morningstars, which would need to be determined at the trial.

3

[¶11] The case proceeded to trial on January 24, 2022. The trial was not reported. According to the district court's decision, only three witnesses testified at the trial: Virgil Morningstar, Rachel Robison, and Christopher Robison. Mr. Morningstar testified he and his wife have two children. They were living in a rental house in Jackson, but the owners sold the rental property, and the Morningstars needed to move out by the end of August 2021. The Morningstars looked for a home that was big enough to accommodate their family and some 4-H animals. They viewed over 20 homes in five months, and they made offers on three homes, all of which were rejected. The Property was the size the Morningstars wanted, and it was large enough to accommodate their 4-H animals. In addition, the Property was closer to Mr. Morningstar's employer, and it had a shop and a walk-out basement. The Property was in a good neighborhood, close to some of the Morningstars' friends, and their children loved the school they would be attending. After the Robisons breached the Contract, the Morningstars continued to look for properties that would meet their needs.

[¶12] The Robisons testified they purchased the Property in October 2019, and they still owed approximately $310,000 on their mortgage. The "sole reason" they listed the Property for sale was to enable them to purchase the Snowmobile Lane lot where they planned to build their "forever home." The Snowmobile Lane lot was 40 acres, and its cost, location, and proximity to their existing neighbors made it attractive to the Robisons. After the Robisons learned the Snowmobile Lane lot was under contract to another buyer, they made offers to purchase less desirable properties, but those offers were all rejected. From the time the complaint was filed through the trial date, the Robisons looked at properties in Sublette County, Sweetwater County, and Utah, but none were available in their price range.

[¶13] The district court entered a written decision denying the Morningstars' request for specific performance. The district court determined the Morningstars failed to present evidence showing monetary damages and attorney's fees would be an inadequate or impractical remedy. The district court also found it would be inequitable and unjust to order specific performance. The district court ordered the Robisons to take all steps necessary to return the Morningstars' earnest money that was still being held by the closing agent, and it ordered the Robisons to pay the Morningstars compensatory damages in the amount of $6,128.[1] This appeal timely followed.

## STANDARD OF REVIEW

[¶14] We have articulated our standard of review for a district court's findings after a bench trial as follows:

---

[1] This amount included $650 for the cost of the building inspection, $5,026.35 for the cost of rental expenses, and $451.65 for utility expenses.

4

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law de novo on appeal.

*Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 31, 460 P.3d 230, 240 (Wyo. 2020), ¶ 31, 460 P.3d at 240 (quoting *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, 1253 (Wyo. 2003)). We will not set aside a district court's findings because we would have reached a different result. *Id.* (quoting *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005)).[2]

## DISCUSSION

### I. *Did the District Court Properly Assign the Morningstars the Burden of Proving Monetary Damages Would be an Inadequate Remedy?*

[¶15] The Morningstars assert the district court erred when it failed to properly apply precedent and required them to prove monetary damages were an inadequate or insufficient remedy when seeking specific performance. "Whether the district court applied the correct burden of proof is a question of law which we review de novo." *Gill v. Lockhart*, 2022 WY 87, ¶ 29, 512 P.3d 971, 980 (Wyo. 2022) (citing *Wise v. Ludlow*, 2015 WY 43, ¶ 19, 346 P.3d 1, 7 (Wyo. 2015)).

---

[2] Our review of this case is made more difficult due to the lack of a transcript. "It is the appellant's responsibility to provide this Court with an 'adequate record to allow us to review the district court decisions for an abuse of discretion.'" *Jenkins v. Jenkins*, 2020 WY 120, ¶ 6, 472 P.3d 370, 373 (Wyo. 2020) (quoting *Walker v. Walker*, 2013 WY 132, ¶ 26, 311 P.3d 170, 176 (Wyo. 2013)). "When no transcript or any other proper substitute record of the facts of a case is included in the record on appeal, we presume that there were no irregularities in the district court's judgment." *Id.* (quoting *Walker*, ¶ 26, 311 P.3d at 176). "[T]he lack of a transcript is not always fatal to an appeal." *Linden v. Linden*, 2020 WY 9, ¶ 2 n. 1, 455 P.3d 1254, 1255 n. 1 (Wyo. 2020) (citing *In re SAJ*, 942 P.2d 407, 409 (Wyo. 1997)). In this case, although the parties did not request specific findings of fact or conclusions of law pursuant to Rule 52 of the Wyoming Rules of Civil Procedure, the district court's decision set forth enough facts to provide sufficient context for us to consider the Morningstars' appeal.

[¶16] "Specific performance is an equitable remedy subject to the court's sound discretion." *Davis,* ¶ 30, 460 P.3d at 239. "Specific performance is not granted as a matter of absolute right even though there is a valid contract." *Id.* at ¶ 32, 460 P.3d at 240 (quoting *Reed v. Wadsworth*, 553 P.2d 1024, 1037 (Wyo. 1976)).

> Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances. It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court.

*Id.* at ¶ 34, 460 P.3d at 241 (quoting *Davidson Land Co., LLC v. Davidson*, 2011 WY 29, ¶ 33, 247 P.3d 67, 76 (Wyo. 2011)). The objective in specific performance cases "is to place the party without fault in as nearly the same position as he would have been had there been no default by the other party." *Ekberg*, 2003 WY 123, ¶ 22, 76 P.3d at 1257 (quoting *McCoy Farms, Inc. v. J & M McKee*, 563 S.W.2d 409, 415 (Ark. 1978)). A district court may grant specific performance "where there is a valid, binding contract and the facts and special equities of the situation demand such relief." *Davis,* ¶ 33, 460 P.3d at 240 (quoting *Dewey v. Wendtland*, 2002 WY 2, ¶ 35, 38 P.3d 402, 416 (Wyo. 2002)).

[¶17] "[T]he 'party requesting specific performance must be able to establish that damages for breach are an inadequate and impractical remedy under the circumstances of the case.'" *Id.* (quoting *Rainbow Oil Co. v. Christmann*, 656 P.2d 538, 545 (Wyo. 1982)). However, "as a general rule," when it is the buyer of the real property who is seeking specific performance, "courts presume that a 'remedy at law is inadequate . . . and no further allegation of inadequacy of legal remedy is necessary beyond that which is implied from the nature of the contract.'" *Davis*, 2020 WY 39, ¶¶ 37, 40, 460 P.3d at 241–42 (quoting *Keystone Sheep Co. v. Grear*, 263 P.2d 138, 142 (Wyo. 1953)). In *Keystone*, we recognized "the right of the vendee[3] to maintain specific performance is too well settled to require further discussion." 263 P.3d at 142–43 (quoting *Baumann v. Pinckney*, 23 N.E. 916, 918 (N.Y. 1890)). We described the reason for this rule:

> Where land, or any estate or interest in land, is the subject matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend on the inadequacy of the legal remedy in the particular case. So it is said to be as much a matter of course for courts of equity to decree a specific performance of a contract concerning real estate, which is in its nature unobjectionable, as it is for courts of law to give damages for its breach. Equity adopts this

---

[3] A vendee is a purchaser of real property. *Vendee*, Black's Law Dictionary (11th ed. 2019).

6

> principle, not because the land is fertile, or rich in minerals, but because it is land, a favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, so as to give an equity for specific performance, without reference to its quality or quantity.

*Keystone*, 263 P.3d at 143 (quoting 81A C.J.S., *Specific Performance*, § [57]).

[¶18] Although the district court was aware of *Davis* and *Keystone*, it chose not to apply that precedent to this case. The district court committed an error of law when it placed the burden on the Morningstars to prove monetary damages were an inadequate or impractical remedy. The district court should have presumed a remedy at law was inadequate in this case. *See Davis*, 2020 WY 39, ¶¶ 37, 40, 460 P.3d at 241–42 (quoting *Keystone Sheep Co.*, 263 P.2d at 142).

## *II. Did the District Court Abuse its Discretion When it Denied the Morningstars' Request for Specific Performance?*

[¶19] The Morningstars claim the district court abused its discretion when it failed to order specific performance. We review the district court's decision on specific performance for an abuse of discretion. *Davis, ¶* 30, 460 P.3d at 239. We evaluate the "reasonableness of the choice made by the district court." *Id.*, 460 P.3d at 239–40 (quoting *Dewey*, 2002 WY 2, ¶ 42, 38 P.3d at 417). "[J]udicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.*, 460 P.3d at 240 (quoting *Dewey*, ¶ 42, 38 P.3d at 417).

[¶20] As discussed above, a buyer does not have an absolute right to specific performance, and the district court still needs to analyze whether the "special equities of the situation demand such relief." *Davis, ¶* 33, 460 P.3d at 240 (quoting *Dewey*, ¶ 35, 38 P.3d at 416). We have announced several factors the district court should consider when deciding whether to award specific performance: 1) the adequacy of consideration 2) whether the specific performance remedy would impose a hardship on one party that outweighs the benefits to the other; 3) whether the remedy would place an undue hardship on a third party; 4) whether specific performance is impossible; 5) whether either party has unclean hands or has engaged in bad faith; 6) whether the contract contains liquidated damages or specific performance clauses; and 7) whether the contract provides that time is of the essence. *Davis*, ¶ 43, 460 P.3d at 242 (citing 19 Am. Jur. 3d *Proof of Facts* §§ 12–15, at 564–70 (1993); 25 Samuel Williston, *Treatise on the Law of Contracts* §§ 67:73–67:78 (Richard A. Lord ed., 4th ed. 2019)).

[¶21] The district court considered these factors when making its decision. The district court gave no weight to the adequacy of the consideration or whether the remedy would

7

place an undue hardship on a third party. It also found there was "no testimony or evidence as to 'whether specific performance is impossible." The district court acknowledged the Contract expressly provided that "time is of the essence" and contained a clause explicitly giving the Morningstars the express option to seek specific performance. The district court recognized these factors supported the Morningstars' position.

[¶22] When considering whether specific performance would impose a hardship on one party that outweighs the benefits to the other, the district court found: "[o]rdering specific performance imposes a significant hardship upon the [Robisons] that outweighs the benefits to the [Morningstars]." The district court found the Robisons would "face significant costs and expenses" because they would have to pay the Morningstars' attorney's fees, their own attorney's and realtor's fees, and the cost of substitute housing and utilities until they could purchase another property. The district court found these costs would "erase significant amounts of equity" the Robisons would receive from the sale of their home. Because the Robisons tried and failed to secure another property, the district court found they would "essentially become displaced from being able to remain in the same neighborhood, and to have the ability to obtain alternative housing which would allow for retaining their pets." The district court found the Morningstars "made suitable arrangements for their housing needs which are not dissimilar to their situation before entering into the Contract," and they could be "made whole" without ordering specific performance. It found this factor favored the Robisons.

[¶23] When considering whether either party had unclean hands or had engaged in bad faith, the district court found the Morningstars "certainly" did not have unclean hands, nor had they engaged in bad faith. Although the district court found the Robisons breached the Contract, it also found they did not have unclean hands because "[t]he circumstances giving rise to their breach" were caused by the actions of their realtor. The district court found this factor to be neutral. After considering these factors, the district court found it would be inequitable and unjust to order specific performance.

[¶24] We find the district court abused its discretion when it found specific performance was not an appropriate remedy in this case. After finding only one of the special equities factors weighed in favor of the Robisons, the district court essentially rewrote the Contract to allow the Robisons to cancel the Contract because their preferred lot was unavailable— a clause the parties agree was not included in the Contract. The Robisons admit they "had no legal recourse to cancel the Contract."

[¶25] "Competent parties have the right to freely contract." *Hassler v. Circle C Res.*, 2022 WY 28, ¶ 12, 505 P.3d 169, 173 (Wyo. 2022) (citing *Nuhome Invs., LLC v. Weller*, 2003 WY 171, ¶ 8, 81 P.3d 940, 944 (Wyo. 2003)).

> It is well established in Wyoming that when parties reduce a
> contract to writing, they must abide by its plainly stated terms.

8

> Courts are not free to rewrite contracts under the guise of interpretation where the contractual provisions are clear and unambiguous. Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability.

*Snyder v. Lovercheck*, 992 P.2d 1079, 1089 (Wyo. 1999) (internal citations and quotation marks omitted). "The parties were free to contract for whatever terms they wished," and they chose to include a separate provision that allowed the Morningstars to seek specific performance. *Id*. The Contract did not include a contingency provision allowing the Robisons to cancel the Contract if the Snowmobile Lane lot was unavailable, thus placing the risk of loss on the Robisons. *See Snyder*, 992 P.2d at 1089. Courts "are not at liberty to rescue parties from the consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract . . . ." *Hassler*, 2022 WY 28, ¶ 12, 505 P.3d at 173 (quoting *Four B Props., LLC v. Nature Conservancy*, 2020 WY 24, ¶ 56, 458 P.3d 832, 846 (Wyo. 2020)). Even if the Robisons were able to purchase the Snowmobile Lane lot, they would have had to pay their realtor's fees, obtain substitute housing, and pay utilities while they built their new home on that lot. Paying the Morningstars' attorney's fees was a foreseeable result of the Robisons' unjustified breach of the Contract. The district court improperly shifted the risk and consequences of the Contract from the Robisons to the Morningstars. The facts "plainly establish the existence of a binding and valid contract and they also establish that the [Morningstars] were ready, willing, and able to" purchase the Property, "and would have done so but for the [Robisons'] refusal" to close the transaction. *See Rainbow*, 656 P.2d at 545. The facts also establish the Robisons had no legal justification for breaching the Contract. The Morningstars "abided by the terms of the [C]ontract[,] and [they are] merely asking [the Robisons] be required to do the same." *Id*. Under the facts and circumstances of this case, specific performance is the proper remedy.

### III. Did the District Court Err as a Matter of Law in its Computation of Damages?

[¶26] The Morningstars allege the district court did not follow the proper procedure for calculating damages. They assert there is a two-step approach to be followed when awarding a party-specific performance in the context of a real estate contract. They contend the district court must first determine whether specific performance is warranted. Then, after the real estate transaction has closed, the district court conducts an accounting of the non-breaching party's damages. "[W]hether the district court employed the proper methodology or legal standard to calculate the damages award is an issue of law, which we review de novo." *Halling v. Yovanovich*, 2017 WY 28, ¶ 28, 391 P.3d 611, 621 (Wyo.

2017) (quoting *Knight v. TCB Constr. & Design, LLC*, 2011 WY 27, ¶ 16, 248 P.3d 178, 183 (Wyo. 2011)).

[¶27]   The district court required the Morningstars to choose between specific performance and monetary damages and found they could not elect to pursue both.   We have said "remedies provided in a contract generally are not exclusive.   Rather, such remedies are merely some of several remedies which might be pursued by an injured party." *Dewey*, 2002 WY 2, ¶ 40, 38 P.3d at 417 (citing *Walters v. Michel*, 745 P.2d 913, 915 (Wyo. 1987). The Contract did not include an "exclusive remedy" clause.   Paragraph 3 of Attachment A allows the Morningstars to elect to either terminate the Contract and seek recovery of their earnest money or pursue specific performance.   However, Paragraph XIII(B) of the Contract states: "this provision shall not limit any other remedies to which the parties may otherwise be entitled."   The district court committed an error of law when it interpreted the Contract as requiring the Morningstars to choose between specific performance and monetary damages.

[¶28]   We have recognized that an award of specific performance may also result in an award of monetary damages. *See Ekberg*, 2003 WY 123, ¶¶ 23–24, 76 P.3d at 1257–58; *Williams v. Collins Commc'ns, Inc.*, 720 P.2d 880, 893–94 (Wyo. 1986).   In *Ekberg*, we discussed the "proper considerations that must be made when specific performance is granted." 2003 WY 123, ¶ 23, 76 P.3d at 1257.   We stated:

> Since the time for performance has passed, the court relates that performance back to that date, by treating the parties as if performance had taken place at that time.   Thus the real estate buyer is entitled to the rents and profits from the time the contract should have been performed, and the real estate seller is entitled to an offset for the interest on the purchase money which he would have received had the contract been performed.   The process is more like an accounting between the parties than an assessment of damages.

*Id.*, 76 P.3d at 1257–58 (internal citations omitted) (quoting *Williams*, 720 P.2d at 893–94).   We also cautioned against awarding damages that would place the non-defaulting party "in a position that was better than he would have been placed had there been no default on the option to purchase real property." *Id.* at ¶ 24, 76 P.3d at 1258.

[¶29]   The district court attempted to put the Morningstars into the position they would have been in if they had never entered into the Contract.   However, the district court should have awarded damages that would put the Morningstars "in as nearly the same position as [they] would have been had there been no default by" the Robisons. *Ekberg*, 2003 WY 123, ¶ 22, 76 P.3d at 1257 (quoting *McCoy Farms, Inc.*, 563 S.W.2d at 415).   Based on the limited record before us, the determination of monetary damages and any limits thereon

should be decided by the district court. On remand, when determining if any monetary damages should be awarded in addition to specific performance, the district court's "guiding principle" should be to relate the Contract back to August 27, 2021, and place the Morningstars in as nearly the same position as they would have been in if the Robisons had not breached the Contract. *Id.*

## CONCLUSION

[¶30]  The district court committed an error of law when it declined to apply the rule that the Morningstars, as the buyers of real property, did not have to prove monetary damages were an inadequate or impractical remedy when seeking an order for specific performance. The district court abused its discretion when it improperly used the special equities factors to rewrite the Contract to allow the Robisons to cancel the transaction. Finally, the district court committed another error of law when it awarded damages that did not place the Morningstars in as nearly the same position as they would have been in if the Robisons had not breached the Contract. We reverse and remand to the district court to enter an order granting the Morningstars' request for specific performance and to determine what other damages, if any, should be awarded to the Morningstars.