# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 113

OCTOBER TERM, A.D. 2024

__November 6, 2024__

CASEY RYAN RUPPERT and JANAE
ELIZABETH RUPPERT,

Appellants
(Plaintiffs),

v.

JUDITH K. MERRILL, in her individual
capacity and as Trustee of the Judith K. Merrill
Revocable Trust dated November 13, 2020; and
THE JUDITH K. MERRILL REVOCABLE
TRUST dated November 13, 2020,

Appellees
(Defendants).

JUDITH K. MERRILL, in her individual
capacity and as Trustee of the Judith K. Merrill
Revocable Trust dated November 13, 2020; and
THE JUDITH K. MERRILL REVOCABLE
TRUST dated November 13, 2020,

Appellants
(Defendants),

v.

CASEY RYAN RUPPERT and JANAE
ELIZABETH RUPPERT,

Appellees
(Plaintiffs).

S-24-0057, S-24-0058

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

***Representing Casey Ryan Ruppert and Janae Elizabeth Ruppert:***
Jeffrey Scott Pope, Isaac Nathan Sutphin, Holland & Hart LLP, Cheyenne, Wyoming. Argument by Mr. Pope.

***Representing Judith K. Merrill and the Judith K. Merrill Revocable Trust:***
Lance Cooper Overstreet, Overstreet Homar & Kuker, Cheyenne, Wyoming. Argument by Mr. Overstreet.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Casey and Janae Ruppert (the Ruppers) entered into a contract to purchase neighboring ranch property from Judith Merrill.  Prior to closing, the Ruppers learned Ms. Merrill did not intend to follow through with the sale.  The Ruppers filed a complaint seeking specific performance and damages.  The district court found Ms. Merrill breached the contract and denied her affirmative defenses.  The court declined to order specific performance but awarded the Ruppers damages and attorneys' fees.  The Ruppers appealed, challenging the court's order denying specific performance.  Ms. Merrill cross-appealed, challenging the court's order on attorneys' fees.  We reverse both orders and independently assess the Ruppers' requested attorneys' fees.

## *ISSUES*

[¶2]   The Ruppers raise two issues we rephrase as one:

> Whether the district court abused its discretion when it declined to grant the remedy of specific performance.

[¶3]   In her cross-appeal, Ms. Merril raises three issues we rephrase as two:

1. Whether the district court abused its discretion when it granted the Ruppers' motion for attorneys' fees without any explanation under the lodestar test or relevant discretionary factors under Wyo. Stat. Ann. § 1-14-126(b) (2023).

2. Whether an independent review of the record demonstrates the Ruppers' requested attorneys' fees are reasonable.

## *FACTS*

[¶4]   The relevant facts are not disputed.  In May 2022, Ms. Merrill planned to move to Oregon to live near her daughter.  She told the Ruppers about her moving plans and asked them if they were interested in purchasing her ranch property.  The property borders the Ruppers' home and contains approximately 1,040 acres with a home and outbuildings.  Ms. Merrill also informed Mr. Ruppert the property had been appraised and valued at $2,810,000, if the property was used for rural residential development.  The Ruppers intended to use the property for agricultural purposes and offered to purchase the property from Ms. Merrill for $1,040,000—one-thousand dollars per acre, based on the Ruppers' previous land purchases in Laramie and Albany counties.  Ms. Merrill accepted the offer.

[¶5]   The parties subsequently executed a purchase and sale agreement (the contract) prepared by Ms. Ruppert, a local attorney.  The contract contained the agreed upon sale

1

price and a closing date of June 13 because Ms. Merrill wanted to close before moving to Oregon. The contract did not include a specific performance clause or indicate that time is of the essence. Mr. Ruppert discussed each contract term with Ms. Merrill before both parties signed the contract. After signing the contract, Ms. Merrill indicated she intended to retain the underlying mineral rights to the property.

[¶6] On June 3, the Rupperts discovered they could not close on the agreed upon date because they needed time to obtain a lender-approved appraisal. Ms. Merrill and the Rupperts agreed to extend the closing date and executed an addendum to the contract extending the date to August 1. They made no other changes to the contract.

[¶7] On June 6, Ms. Merrill texted Mr. Ruppert again expressing her intent to retain the mineral rights on the property. He did not respond. Soon after, Ms. Merrill's daughter contacted Mr. Ruppert and indicated Ms. Merrill would not be accepting their offer due to an unfair purchase price and an unenforceable contract. Mr. Ruppert then sent a letter to Ms. Merrill stating his intent to follow through with the contract. The next month, Ms. Merrill's attorney sent Mr. Ruppert a letter explaining she would not go through with the sale. By the time Mr. Ruppert received this letter, the Rupperts had secured financing to purchase the property and were prepared for closing.

[¶8] The Rupperts filed a complaint against Ms. Merrill alleging breach of contract, among other claims, and seeking specific performance and damages. Ms. Merrill filed an answer raising several affirmative defenses, including undue influence and unconscionability. The district court held a two-day bench trial in May 2023. The court later entered its written order finding (1) Ms. Merrill breached the contract, (2) she was competent to execute the agreement and there was no evidence the Rupperts took advantage of her, (3) the contract's terms are not unconscionable and the price offered for the property was reasonable under the circumstances, (4) the equities weighed against ordering specific performance, and (5) the Rupperts established damages in the amount of $22,342. The court also concluded the Rupperts were entitled to reasonable attorneys' fees.

[¶9] The Rupperts subsequently filed a motion requesting $55,258.50 in attorneys' fees and $3,082.60 in costs. Ms. Merrill objected, arguing the Rupperts failed to attach documentary proof of their costs in the motion, failed to show the Rupperts incurred the claimed attorneys' fees, and the requested attorneys' fees are unreasonable. The Rupperts filed a reply addressing the objections. The district court granted the Rupperts' motion without explanation and summarily awarded them the entire amount requested in attorneys' fees and costs, totaling $58,341.10.

[¶10] The Rupperts timely appealed the court's order denying specific performance. Ms. Merrill timely appealed the court's order on attorneys' fees.

## DISCUSSION

### I. The district court abused its discretion when it denied the Rupperts the remedy of specific performance.

[¶11]  We review the district court's order declining to grant specific performance for an abuse of discretion. *Morningstar v. Robinson*, 2023 WY 28, ¶ 19, 527 P.3d 241, 247 (Wyo. 2023) (citation omitted).  "[J]udicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (citation omitted).  "A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight." *Bailey v. Bailey*, 2024 WY 65, ¶ 6, 550 P.3d 537, 542 (Wyo. 2024) (citation omitted).

[¶12]  We have stated:

> Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances.  It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court.

*Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 34, 460 P.3d 230, 241 (Wyo. 2020) (quoting *Davidson Land Co. v. Davidson*, 2011 WY 29, ¶ 33, 247 P.3d 67, 76 (Wyo. 2011)).  When a *buyer* of real property seeks specific performance, the trial court must presume a remedy at law—such as damages—is inadequate.[1]  *Morningstar*, 2023 WY 28, ¶ 17, 527 P.3d at 247 ("[N]o further allegation of inadequacy of legal remedy is necessary beyond that which is implied from the nature of the contract." (quoting *Davis*, 2020 WY 39, ¶¶ 37, 40, 460 P.3d at 241–42)).  However, the court is not required to grant specific performance "as a matter of absolute right." *Id.* at ¶ 16, 527 P.3d at 246 (citation omitted).  Specific performance is appropriate when there is a valid contract and "the facts and special equities of the situation demand such relief." *Id.*, 527 P.3d at 246–47 (quoting *Davis*, 2020 WY 39, ¶ 33, 460 P.3d at 240).

[¶13] We have articulated several factors a trial court may consider when analyzing whether the facts and "special equities" demand a specific performance remedy. *Id.* at ¶ 20,

---

[1] In other contexts, when a party requests specific performance, the party must "establish that damages for breach are an inadequate and impractical remedy under the circumstances of the case." *Morningstar*, 2023 WY 28, ¶ 17, 527 P.3d at 247 (internal quotations and citation omitted); *see also Davis*, 2020 WY 39, ¶¶ 41–44, 460 P.3d at 242–43 (declining to specifically adopt the presumption that damages are an inadequate remedy for a *seller* of real property).

527 P.3d at 247–48 (citation omitted); *Davis*, 2020 WY 39, ¶ 43, 460 P.3d at 242 (citations omitted). Those factors are:

> 1) the adequacy of consideration 2) whether the specific performance remedy would impose a hardship on one party that outweighs the benefits to the other; 3) whether the remedy would place an undue hardship on a third party; 4) whether specific performance is impossible; 5) whether either party has unclean hands or has engaged in bad faith; 6) whether the contract contains liquidated damages or specific performance clauses; and 7) whether the contract provides that time is of the essence.

*Morningstar*, 2023 WY 28, ¶ 20, 527 P.3d at 247–48 (citation omitted).

[¶14]  The Rupperts argue the district court abused its discretion because the equities the court considered were contradicted by its own factual findings and do not support denying specific performance. The Rupperts also assert the court failed to consider several of the equitable factors that weighed in their favor. We agree with the Rupperts that the district court abused its discretion in the manner it weighed the equities to deny specific performance.

[¶15]  The district court expressly found the parties had a valid contract and Ms. Merrill breached the contract by failing to perform. However, in considering whether to grant specific performance, the court did not expressly weigh any of the equitable factors. It instead discussed that Ms. Merrill was disadvantaged due to her age and personal circumstances, which included the recent death of her husband. The court also suggested the equities weighed against the Rupperts because they failed to straighten out Ms. Merrill's misunderstandings about (1) retaining the mineral rights to the property and (2) a prior offer Ms. Merrill received from her neighbor in the amount of $1,200,000 that she mistook as an offer for $1,000,002. Yet, contrary to these suggestions, the court expressly found Ms. Merrill was competent to enter the contract, the Rupperts did not take advantage of her under the circumstances, there was no evidence of the value of any mineral interests or how that would have affected the transaction, and the alternate offer differed very little from the Rupperts' offer, which was reasonable. These incongruencies cannot support a reasoned decision to deny the buyer's specific performance claim.

[¶16]  Moreover, the district court overlooked an equitable factor that deserved significant weight in the Rupperts' favor—the adequacy of consideration. *Id.* (citation omitted). The court found the agreed upon price represented a fair value under the circumstances and was "entirely reasonable" for Ms. Merrill. These findings weigh in the Rupperts' favor.

[¶17] Other factors weighing in the Rupperts' favor were also overlooked: relative hardship and impossibility. *Id.* (citation omitted). As of the scheduled closing date, Ms. Merrill had successfully moved into her new home in Oregon. The record does not show, and Ms. Merrill does not indicate on appeal, how specific performance would cause her any hardship other than a lost opportunity to negotiate a better deal. The record shows the Rupperts, on the other hand, would suffer some hardship if the court did not require Ms. Merrill to complete the sale she agreed to. As the district court acknowledged in its order, because the property bordered their home, it was uniquely situated for the Rupperts to use for their ranching business. Further, because he had spent time on the property as a child with his grandfather, Ms. Merrill's property had some sentimental value to Mr. Ruppert. It is undisputed the Rupperts were prepared to close on the agreed upon date. Impossibility was not an issue. The court found Ms. Merrill was competent to execute the contract and she intended to sell the property. It made no findings to indicate Ms. Merrill could not specifically perform.

[¶18] "It is well established in Wyoming that when parties reduce a contract to writing, they must abide by its plainly stated terms." *PBS Enterprizes, Inc. v. CWCapital Asset Mgmt., LLC*, 2008 WY 53, ¶ 16, 183 P.3d 1140, 1144 (Wyo. 2008) (quoting *Snyder v. Lovercheck*, 992 P.2d 1079, 1089 (Wyo. 1999)). Courts may not "rescue parties from the consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract . . . ." *Morningstar*, 2023 WY 28, ¶ 25, 527 P.3d at 249 (citation omitted). "[A] court must enforce the contract as drafted by the parties . . . unless the contract is voidable on grounds such as mistake, fraud or unconscionability." *Id.* (quoting *Snyder*, 992 P.2d at 1089). The district court clearly found the parties had established a valid contract and expressly denied Ms. Merrill's affirmative defense of unconscionability, leaving her with no legal justification for breaching the agreement to sell the property to the Rupperts. Further, the Rupperts established they were "ready, willing, and able to" purchase the property, "and would have done so but for [Ms. Merrill's] refusal" to close the transaction. *See id.* (quoting *Rainbow Oil Co. v. Christmann*, 656 P.2d 538, 545 (Wyo. 1982)).

[¶19] We conclude the court abused its discretion when it made contradictory findings and reached beyond the relevant findings to deny specific performance. *See Morningstar*, 2023 WY 28, ¶ 19, 527 P.3d at 247 (citation omitted). Under the circumstances of this case, the proper remedy is specific performance. *See id.*; *Williams v. Collins Commc'ns, Inc.*, 720 P.2d 880, 893 (Wyo. 1986) ("The essence of specific performance is that the contract will be enforced[.]" (citation omitted)).[2]

---

[2] The district court found the Rupperts proved they incurred $22,342 in damages due to Ms. Merrill's failure to perform at the time of closing. Neither party challenges this damage award on appeal. "We have recognized that an award of specific performance may also result in an award of monetary damages." *Morningstar*, 2023 WY 28, ¶ 28, 527 P.3d at 249 (citations omitted). Therefore, we will not disturb the district court's damage award.

***II.    The Rupperts' requested attorneys' fees are unreasonable under the lodestar test and considering discretionary factors in Wyo. Stat. Ann. § 1-14-126(b).***

[¶20]  Ms. Merrill, on cross-appeal, argues the district court abused its discretion when it awarded the Rupperts' attorneys' fees without any analysis or reference to applicable Wyoming law.  The Rupperts concede the court erred when it awarded attorneys' fees without explanation.  We agree with the parties.  *See Circle C Res. v. Hassler*, 2023 WY 54, ¶ 26, 530 P.3d 288, 296 (Wyo. 2023) ("[T]he trial court abused its discretion by entering a summary fee award without explanation." (citations omitted)).

[¶21]  Both parties invite this Court to independently assess the reasonableness of the Rupperts' attorneys' fees request, explaining the district court judge who entered the order retired soon after and any review, whether in this Court or the district court, would necessarily consider the same cold record.  They also assert that principles of judicial economy weigh in favor of our conducting an independent review.

[¶22]  We tend to play a limited role in reviewing attorneys' fees requests related to trial court proceedings because the trial court has "a more comprehensive understanding of the litigation underlying the fee request."  *Id.* at ¶ 28, 530 P.3d at 296 (citation omitted); *In re NRF*, 2013 WY 9, ¶ 3, 294 P.3d 879, 881 (Wyo. 2013) (citations omitted); *see also Fox v. Vice*, 563 U.S. 826, 838, 837, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011) ("We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.").  Yet, we have acknowledged "that appellate judges, such as those on this Court, 'are themselves experts in assessing the reasonableness of an attorneys' fee award, and . . . the appellate court may independently review the record, or itself set the fee.'"  *NRF*, 2013 WY 9, ¶ 3, 294 P.3d at 881 (citations omitted).  Principles of judicial economy may also weigh in favor of this Court "determining fees in certain cases where the record patently supports the award or necessary adjustments, or to avoid ongoing litigation."  *Circle C Res.*, 2023 WY 54, ¶ 28, 530 P.3d at 296–97 (citation omitted).  The Rupperts' requested attorneys' fees and supporting documents, along with Ms. Merrill's objections, are clearly reflected in the record.  Therefore, due to the unique circumstances of this case, and for purposes of judicial economy, we will independently assess the Rupperts' attorneys' fees request.

[¶23]  To determine whether attorneys' fees are reasonable, we apply the federal "lodestar" test.  *Id.* at ¶ 23, 530 P.3d at 295 (citations omitted).

> The lodestar test requires that two factors be considered: (1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward.  The party who is seeking an award of fees has the burden of providing proof of the

6

reasonableness of his fee. In order to meet that burden of proof, the claimant must present not only an itemized billing reflecting the time and the rate, but there must be evidence demonstrating that the fee was reasonable.

*Id.* (quoting *Ringolsby v. Johnson*, 2008 WY 127, ¶ 14, 193 P.3d 1167, 1170 (Wyo. 2008)). Wyo. Stat. Ann. § 1-14-126(b) lists several discretionary factors we may consider:

> (i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;
>
> (iii) The fee customarily charged in the locality for similar legal services;
>
> (iv) The amount involved and the results obtained;
>
> (v) The time limitations imposed by the client or by the circumstances;
>
> (vi) The nature and length of the professional relationship with the client;
>
> (vii) The experience, reputation and ability of the lawyer or lawyers performing the services; and
>
> (viii) Whether the fee is fixed or contingent.

Wyo. Stat. Ann. § 1-14-126(b).

[¶24]   In their motion, the Rupperts request $55,528.50 in attorneys' fees and $3,082.60 in costs.[3]   Their attorneys charged up to $545 per hour for partner work, $375 per hour for "of counsel" work, and $295 per hour for paralegal work. They billed for 115.5 hours.[4]

---

[3] Attorneys' fees and costs are separate awards under Wyoming rules and caselaw. *See Circle C Res.*, 2023 WY 54, ¶ 21 n.3, 530 P.3d at 294 n.3; *see also* U.R.D.C. 501.  On appeal, Ms. Merrill only challenges the reasonableness of the Rupperts' requested attorneys' fees.  We limit our analysis accordingly. *See Circle C Res.*, 2023 WY 54, ¶ 21 n.3, 530 P.3d at 294 n.3 (limiting this Court's analysis to attorneys' fees because the appellant did not raise an issue on appeal with the costs awarded).

[4] The affidavit from the Rupperts' attorney states the total number of hours billed was 114 hours.  However, the itemized billing entries total 115.5 hours.

The Rupperts supported their fee request with (1) affidavits from one of their attorneys and outside counsel explaining the reasonableness of the rates charged and time spent on the case, (2) an itemized statement of attorneys' fees and costs incurred throughout the case, and (3) deposition testimony from Ms. Ruppert discussing attorneys' fees she had paid. After reviewing the record, and for the reasons explained below, we conclude the Rupperts' requested attorneys' fees should be reduced.

[¶25] We first consider whether the Rupperts' attorneys billed a reasonable number of hours for the work they performed.[5] This Court has a "prerogative (indeed, [a] duty) to winnow out excessive hours." *Circle C Res.*, 2023 WY 54, ¶ 34, 530 P.3d at 298 (citation omitted). We have also cautioned about billing entries that "give the [reviewing] court no way to ascertain 'the nature of the services performed, and thus the reasonableness of such services.'" *Id.* (quoting *Ringolsby*, 2008 WY 127, ¶ 18, 193 P.3d at 1170–71). The billing statement the Rupperts provided clearly articulates the nature of the services performed. The statement contains an itemized list of each billing entry, and each billing entry contains the date of the billing, a description of the work performed, the attorney who performed the work, and the time spent on the work performed. The Rupperts' attorneys billed for depositions, motions (including a motion for summary judgment), court hearings, trial preparation, trial, and post-trial fillings. The greatest number of hours billed were for trial preparation for the two-day bench trial, which included witness preparation, reviewing exhibits, preparing examination questions, and communicating with the Rupperts.

[¶26] The record shows the Rupperts' attorneys worked diligently from the time the complaint was filed in July 2022 through the district court's final order in early 2024. The Rupperts tried to resolve the matter sooner through summary judgment; however, the court denied the motion due to genuine issues of material fact related to Ms. Merrill's affirmative defense of unconscionability. The Rupperts also responded to, and ultimately defeated, Ms. Merrill's motion for judgment on the pleadings, which asserted their breach of contract claim could not be sustained because the property was titled under Ms. Merrill's trust and she did not sign the contract as the trustee. During the bench trial, the Rupperts presented several witnesses and exhibits, and cross-examined Ms. Merrill's witnesses to refute her affirmative defenses. The Rupperts demonstrated to the district court that the contract was valid and enforceable, they suffered damages due to Ms. Merrill's breach, and they were entitled to specific performance—as discussed above. Given both parties' issues and the

---

[5] Ms. Merrill argues the Rupperts' motion for attorneys' fees failed to evidence the fees were actually incurred or billed to the Rupperts. However, she fails to cite, and we were unable to find, caselaw specifically requiring that attorneys must bill fees to a party before a court may award such fees. The law simply requires that the party seeking attorneys' fees must prove any such fees are reasonable. *See, e.g.*, *Circle C Res.*, 2023 WY 54, ¶ 23, 530 P.3d at 295 (citations omitted); *see also Blum v. Stenson*, 465 U.S. 886, 894–95, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) (allowing the recovery of reasonable attorneys' fees under a fee shifting statute even if the work was performed pro bono with no fee billed to the client).

procedural timeline, including trial, we conclude the Rupperts' attorneys billed a reasonable number of hours.[6]

[¶27] We next consider the reasonableness of the rates charged. *Circle C Res.*, 2023 WY 54, ¶ 23, 530 P.3d at 295 (citations omitted). To determine what constitutes a reasonable rate, the party requesting attorneys' fees "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224–25 (10th 2006) (citations omitted); *Blum*, 465 U.S. 886 at 895 n.11 (establishing that reasonable attorneys' fees "are to be calculated according to the prevailing market rates in the relevant community[.]"). "The hourly rate should be based on the lawyers' skill and experience in . . . analogous litigation." *Lippoldt*, 468 F.3d at 1225 (citing *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)); Wyo. Stat. Ann. § 1-14-126(b)(iii) (one of the discretionary factors when assessing attorneys' fees is "[t]he fee customarily charged in the locality for similar legal services").

[¶28] The Rupperts contend Colorado rates are part of the prevailing market. We find *Kersch v. Bd. of Cnty. Comm'rs of Natrona Cnty. Wyo.*, 851 F. Supp. 1541, 1544 (D. Wyo. 1994) instructive on this issue. In *Kersch*, the plaintiffs sought attorneys' fees after succeeding in a civil rights-related contempt action. *Id.* at 1542–43. The plaintiffs requested fees at the prevailing market rate in Denver, where their attorney's office was located. *Id.* at 1544. The defendant argued the rates should be charged based on where the matter was litigated, in Casper. *Id.* In response, the court stated that "absent unusual circumstances," a party seeking attorneys' fees "is limited to the fee rate charged by attorneys in the local community possessing similar expertise." *Id.* (citing *Ramos*, 713 F.2d at 555). However, the court went on to identify "a number of criteria" courts have found useful when determining whether to apply out-of-town rates:

> These standards include whether (1) the case required a specialized expertise not found in the local market; (2) the case required or could have required significant financial resources; (3) the case raised unpopular issues; and (4) it was reasonable for the clients to look to out-of-town counsel because attorneys

---

[6] Conversely, we find the paralegal's billing entry to be unreasonable. The affidavit attached to the Rupperts' motion for attorneys' fees indicates a one time, 1.8-hour charge for paralegal work at a rate of $295 per hour. The entry specifically indicates the paralegal communicated with Ms. Ruppert about the "findings of fact and conclusions law" that counsel had prepared. This Court has approved including reasonable paralegal expenses within attorneys' fees awards to "encourage efficient and cost-effective legal services and give the trial courts greater discretion in fashioning reasonable awards." *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 950 (Wyo. 2000). However, Ms. Ruppert is an attorney who works at the same law firm as the paralegal. She no doubt is familiar with findings of fact and conclusions of law and likely did not require additional paralegal communications. We therefore reduce the hours billed accordingly.

9

in the community have not filed, and have shown no interest in filing, such litigation.

*Id.* The court found no Wyoming attorneys had brought cases similar to the plaintiffs' case and there was no reasonable likelihood the plaintiffs could have obtained counsel in the locality for such a matter. *Id.* For those reasons, the court held the case presented "unusual circumstances warranting the award of out-of-town rates." *Id.* at 1545.

[¶29]   The Rupperts present no comparable circumstance to support the rate they request. Their case involves a breach of contract for the sale of real estate and a request for specific performance. Several Wyoming cases with Wyoming attorneys addressed similar issues. *See, e.g.*, *Morningstar*, 2023 WY 28, 527 P.3d 241; *Davis*, 2020 WY 39, 460 P.3d 230. We therefore conclude the Rupperts could have obtained competent legal services at Wyoming market rates. *See Kersch*, 851 F. Supp. at 1544. The question then becomes: what are the prevailing market rates for this type of litigation experience in Wyoming?

[¶30]   As the party requesting the fees, the Rupperts had the burden to show $545 and $375 per hour represented reasonable Wyoming rates. *Circle C Res.*, 2023 WY 54, ¶ 23, 530 P.3d at 295. They attached two affidavits to their motion. The first affidavit acknowledged these rates are high compared to other law firms in Wyoming but stated they are in line with top tier firms in the state. In the second affidavit, an attorney who previously worked at the same Wyoming firm as the Rupperts' attorneys and was familiar with Wyoming and Colorado legal markets, stated that compared to other jurisdictions, the requested rates are reasonable for this type of litigation and the experience level of the Rupperts' attorneys. The Rupperts' legal team consisted of two partners from the firm—one with twenty years of experience and the other with ten—and one "of counsel" attorney with fourteen years of experience.

[¶31]   We have previously explained that "[a]n affidavit from a party or an attorney stating only the total amount of fees and that the amount is reasonable is not sufficient to satisfy the burden of proof." *Dishman v. First Interstate Bank*, 2015 WY 154, ¶ 14, 362 P.3d 360, 365 (Wyo. 2015) (citations omitted); *see also Circle C Res.*, 2023 WY 54, ¶ 23, 530 P.3d at 295 ("In order to meet that burden of proof, the claimant must present not only an itemized billing reflecting the time and the rate, but there must be evidence demonstrating that the fee was reasonable." (citation omitted)). Because we have undertaken to independently assess the attorneys' fees request, we "ha[ve] the obligation to peruse a fee application with an experienced eye and fix a reasonable fee by the exercise of judgment." *Circle C Resources*, 2023 WY 54, P25, 530 P.3d at 296; *Dishman*, 2015 WY 154, ¶ 16, 362 P.3d at 366 (court "has the obligation to scrutinize the fee application 'with an experienced eye.'" (quoting *NRF*, ¶ 9, 294 P.3d at 883)).

[¶32]   In reviewing our case law, we found only one matter where we approved an attorneys' fee award at an hourly rate close to what the Rupperts requested. *Ultra Res.,*

*Inc. v. Hartman*, 2010 WY 36, ¶¶ 163–64, 226 P.3d 889, 939 (Wyo. 2010) (affirming an award of attorneys' fees involving, in part, a $400 hourly rate for various attorneys who worked on the matter). In stark contrast to the Rupperts' case, *Ultra Resources* involved "unique and extremely complicated matters of oil and gas litigation and accounting" and "matters of obviously significant value." *Id.* at ¶ 164, 226 P.3d at 939.

[¶33]  We also acknowledge our recent holding in *Hensel v. DAPCPA RPO, LLC*, 2023 WY 84, ¶ 27, 534 P.3d 460, 467–68 (Wyo. 2023). There, applying the lodestar test, the district court determined the requested hourly rate of $495 for partner work and $390 for senior associate work was unreasonable "given there were no novel or difficult issues in the case, no indication the attorneys and their firm were uniquely impacted by the time dedicated to the case or that [their client] imposed pressure on them, and no evidence that [their client] was a difficult client." *Id.* The court instead found an hourly rate of $250 was "the prevailing market rate" in the local jurisdiction. *Id.* We affirmed the court's order awarding the lower attorneys' fees. *Id.* at ¶¶ 31–33, 534 P.3d at 468–69.

[¶34]  We believe a $250 hourly rate is also reasonable here. As in *Hensel*, the present matter did not involve novel or complex legal issues. *See id.* at ¶ 27, 534 P.3d at 468. Nor did the Rupperts show that their attorneys were uniquely impacted by the time spent on this case, that they had imposed any pressure on their attorneys, or that they were difficult clients. *See id.* In further support of the reasonableness of this rate, the 2023 Wyoming State Bar Member Survey Results confirm that only 17.76 percent of respondent attorneys charged over $350 an hour, another 17.76 percent charged between $300 and $350 and hour, and 26.15 percent charged between $200 and $299 an hour.[7] *See Versteeg v. Bennett, Deloney & Noyes, P.C.*, 839 F.Supp.2d 1238, 1242 (D. Wyo. 2011) (establishing a rate "[b]ased on the Court's experience, the [2009] Wyoming Bar Survey and other cases from the District[.]"). Applying this rate, we award the Rupperts $28,425.00 in fees.

## *CONCLUSION*

[¶35] The district court abused its discretion when it denied the Rupperts specific performance. The court also erred when it granted the Rupperts' motion for attorneys' fees and costs without explanation. We reduce the Rupperts' attorneys' fee award to $28,425.00, and award $3,082.60 in costs. We therefore reverse and remand for entry of an order consistent with this opinion.

---

[7] These results may be accessed on the Wyoming State Bar website. Wyo. State Bar, 2023 Wyo. State Bar Member Survey Results, https://www.wyomingbar.org/wp-content/uploads/2023-Bar-Member-Survey-Results.pdf (last visited Oct. 29. 2024).